STATE v. FRED BASS, JR.

(Filed 9 November, 1960.)

**1. Criminal Law § 101—**

In order to convict a defendant of a criminal offense, the State must prove first that the offense charged had been committed, that is proof of the *corpus delicti*, and second that the offense was committed by the defendant.

**2. Same—**

The extra-judicial confession of guilt by a defendant charged with a crime is insufficient to support a conviction without evidence *aliunde* the confession tending to establish the fact that the crime charged had been committed.

**3. Criminal Law § 60—**

In order for shoeprints found at the scene of the crime to have any probative force in connecting defendant with the commission of the crime, it must be shown that the shoeprints were made at the time of the crime and that the shoeprints correspond to shoes worn by the accused at that time, and evidence that shoeprints of a peculiar kind were found at the scene, without any evidence comparing such shoeprints with the shoes of defendant, has no tendency to identify defendant as the perpetrator of the offense.

**4. Obscenity—**

Evidence tending to show that shoeprints were found six or eight feet from the window of a house in which a woman lived alone and that shoeprints were also found in the edge of a field nearby, that bloodhounds were put on the trail at the edge of the field and followed the scent to defendant's house, without evidence as to when or by whom

the tracks were made, is insufficient evidence of the *corpus delicti aliunde* the confession of the defendant to be submitted to the jury in a prosecution under G.S. 14-202.

**5. Criminal Law § 101—**

When the State relies upon circumstantial evidence, the incriminating facts must be of such nature and so connected or related as to point. unerringly to the defendant's guilt and exclude any other reasonable hypothesis.

**6. Same—**

There must be legal evidence of the fact in issue and not merely such as raises a suspicion or conjecture in regard to it.

PARKER, J., dissents.

APPEAL by defendant from *Frizzelle, J.,* at March 1960 Term, of LENOIR.

Criminal prosecution upon a warrant issued out of the Municipal-County Court of the City of Kinston and County of Lenoir, North Carolina, charging that on or about the 19th day of January, 1960, Fred Bass, Jr., violated the following law, to-wit: General Statutes of North Carolina, Section 14-202, as amended, in that he did unlawfully and wilfully peep secretly into a room in a private residence, occupied by a woman in the nighttime, to-wit: the room of Mrs. Bessie Hardy, contrary to said law, etc., returnable before said court, etc.

In the Municipal-County Court the defendant entered a plea of not guilty. It was adjudged by that court that defendant was guilty as charged, and he was sentenced to two (2) years in jail to be assigned to work the State roads.

Defendant appealed therefrom to the Superior Court, and again pleaded not guilty.

The evidence offered upon the trial in the Superior Court by the State, as set out in the record on this appeal, tends to show this narrative of events and circumstances at and about the date of, and in connection with the alleged crime, with which defendant, Fred Bass, Jr., is charged.

About 10 P.M., on 19 January 1960, one Arnold Albert, who lives about five-tenths of a mile from Mrs. Hardy, passed her home "and saw a man standing on a public road at the edge of the field off the highway. The road was between him and Mrs. Hardy's house, and he was not in the yard. He saw 'a fellow' standing on the edge of the road next to the field; didn't know what 'fellow,' but a colored man was standing out there."

Knowing that Mrs. Hardy was at home alone at this time, Arnold Albert contacted the sheriff's department. Deputy Sheriff Kirby Hardy, the son of Mrs. Hardy, answered the call and went to his mother's house to investigate. He testified that " * * * when he got there he found some tracks going to and leaving the window which he followed across the road and around the edge of the field that had been broken up. He followed the tracks around the woods and found a track with a half-soled heel that led from the window." The tracks were within about six or eight feet of the Hardy house.

Deputy Sheriff Hardy thereupon called Deputy Sheriff George Hill to bring the blood hound there. And while Hardy testified they started the dog at the window, the keeper testified that the blood hound was put on the track at the edge of the field across the highway from the Hardy house where the man was seen standing. Ralph Johnson, testifying for the State, said that he was in charge of the dog, and that " * * * we started the tracks the first time at the edge of the field where the man was seen across the highway; started the tracks across the highway from the house * * *."

The dog went around the field and surrounding woods, crossed another road to a highway, came to a pasture, went through the pasture to a barn, around a fence, and into and up a dirt road toward where the defendant lived. When the dog got to the defendant's house, he went into a back porch, then around to the front porch and stood there.

Testimony of the State's witnesses tends to show that the defendant's house was about one and one-tenth miles from the Hardy house. The State's evidence further tends to show that the defendant made a confession to the charge. Defendant denies that he made the confession voluntarily, alleging that he was threatened and beaten by the deputies.

The defendant moved for judgment as of nonsuit at the conclusion of the State's evidence, and aptly renewed the motion at the conclusion of all the evidence.

Verdict: Guilty as charged.

Judgment: Confinement in Lenoir County jail for a period of twelve months to be assigned to work under direction of the prison department.

To the judgment entered, and to its rendition, defendant in apt time objects and excepts and appeals to Supreme Court and assigns error.

*Attorney General Bruton, Assistant Attorney General Harry W. McGalliard for the State.*

*H. E. Beech, W. G. Pearson, II, for defendant, appellant.*

WINBORNE, C. J.　At the outset of this appeal counsel for the accused, conceding for sake of argument that the defendant's confession was voluntary, contends that "a naked extra-judicial confession uncorroborated by independent evidence and proof of *corpus delicti*, is insufficient to sustain a conviction of the crime charged." In other words, the defendant contends the case should have been nonsuited because, even if the confession were admissible, there was not, as a matter of law, sufficient evidence *aliunde* the confession to carry the case to the jury. G.S. 15-173.

In Wharton's Criminal Evidence (12th Ed.), Vol. 2, Sec. 393, p. 130, it is said: "The proof of every crime consists of: (1) Proof that the crime charged has been committed by someone; and (2) proof that the defendant is the perpetrator of the crime. The first element is the body of the crime, or *corpus delicti*; the second is the proof of the defendant's connection with the crime, i.e., his guilty participation.

"It is practically universally held that the *corpus delicti* of a crime cannot be proved by an extra-judicial confession standing alone. Thus a verdict of guilty and a subsequent conviction cannot be sustained upon an extra-judicial confession only. Stated conversely, the rule is that an extra-judicial confession of the accused must be corroborated by independent proof of the *corpus delicti* of the crime."

This states succinctly the law of this State. See the following cases: (a) *S. v. Norggins,* 215 N.C. 220, 1 S.E. 2d 533, where the Court held that: "It is fundamental law that proof of a charge in criminal cases involves the proof of two distinct propositions: (1) That the act itself was done, and (2) that it was done by the person or persons charged. The proof of the *corpus delicti* is just as essential as is the proof of the identity of the person committing the offense, and proof thereof is a prerequisite to a conviction."

(b) *S. v. Edwards,* 224 N.C. 577, 31 S.E. 2d 762, where it is held that: "Proof of a charge, in a criminal cause, involves the proof of two distinct propositions; first, that the act itself was done, and secondly, that it was done by the person charged and none other— in other words, proof of the *corpus delicti*— and of the identity of the prisoner. Hence, before there can be a lawful conviction of a crime, the *corpus delicti*— that is, that the crime charged has

been committed by someone— must be proved. Unless such a fact exists there is nothing to investigate."

Moreover, in *S. v. Cope*, 240 N.C. 244, 81 S.E. 2d 773, in opinion by *Denny, J.*, it is said: "In our opinion, none of the above cases authoritatively holds that a naked extra-judicial confession, uncorroborated by any other evidence, is sufficient to sustain the conviction of a defendant charged with the commission of a felony * * * Therefore, it is our considered judgment that in such cases there must be evidence *aliunde* the confession of sufficient probative value to establish the fact that a crime of the character charged has been committed."

Indeed, in *S. v. Thomas*, 241 N.C. 337, 85 S.E. 2d 300, in opinion by *Parker, J.*, the Court states: " * * * The general rule is well settled that a naked extra-judicial confession of guilt by a defendant charged with a crime, uncorroborated by any other evidence, is not sufficient to sustain a conviction."

Therefore, the question to be decided now is whether there is evidence of sufficient probative value *aliunde* the confession to establish the fact that the crime charged has been committed. And in this regard, the State relies solely on the fact that tracks allegedly made by the accused were found at the scene of the alleged crime. In *S. v. Palmer*, 230 N.C. 205, 52 S.E. 2d 908, *Ervin, J.*, said: "In the nature of things evidence of shoeprints has no legitimate or logical tendency to identify an accused as the perpetrator of a crime unless the attendant circumstances support this triple inference: (1) That the shoeprints were found at or near the place of the crime; (2) that the shoeprints were made at the time of the crime; and (3) that the shoeprints correspond to shoes worn by the accused at the time of the crime (citations omitted). * * * Moreover, the bare opinion of a witness that a particular shoeprint is the track of a specified person is without probative force on the question of identification * * * ." *S. v. Reitz*, 83 N.C. 634.

"The great master, Dean Wigmore, had this to say on this phase of the law of evidence: 'No doubt a witness to the identity of footmarks should be required to specify the features on which he bases his judgment of identity; and then the strength of the inference should depend on the degree of accurate detail to be ascribed to each feature and the unique distinctiveness to be predicated of the total combination. Testimony not based on such data of appreciable significance should be given no weight.' Wigmore on Evidence (3rd Ed.), Sec. 415."

In applying the rules as laid down in the *Palmer* case, *supra,* to the present case, we find that there was evidence of some footprints within six or eight feet of the window of the Hardy house. Just when and by whom the tracks were made is not made to appear. In the language of State's witness, Deputy Sheriff Hardy, "He didn't observe the shoe track at the house, but before he picked defendant up, observed defendant's shoes he was wearing when he went to the house. From observation the track at the window and the shoes the defendant was wearing were the same size track. There was a half sole about the instep, kind of raised up, the land was sandy and the imprint could be seen on the ground. *It was the same size and mark or similar to the same mark."*

Deputy Sheriff Hardy further testified that there was a tack on the shoe, where the shoe was half-soled. Did the impression in the footprint compare with the shoe of the defendant? There is no evidence in the record that it did. Deputy Sheriff Hardy specifically testified out of the jury's hearing that " * * * at no time did he try to measure the track outside with that of the defendant and defendant did not ask him to do it * * * ." To put it another way, no effort was made on the part of the State to check defendant's shoe as against the footprints found in the yard.

Neither does the State's evidence show that the tracks found in the field and woods were the same as those within six or eight feet of the Hardy house. The evidence does not show that the bloodhound tracked the footprints around the house, but on the contrary, specifically shows that the tracking was started at the edge of the field across the road from the Hardy house.

A careful consideration of the evidence in the record of case on appeal, narrated above, taken in the light most favorable to the State, leads to the conclusion that the evidence is insufficient to support a verdict of guilty on the charge against the defendant as set out in the warrant. There is no direct evidence to connect defendant with the commission of the crime. The evidence offered is circumstantial, conjectural, and speculative. All that is shown may be true, and defendant be innocent of the crime. Therefore, the motions of defendant for judgment of nonsuit should have been sustained.

When the State relies upon circumstantial evidence for a conviction, " * * * the rule is that the facts established or advanced on the hearing must be of such a nature and so connected or related as to point unerringly to the defendant's guilt and exclude any other reasonable hypothesis * * * ," *Stacy, C. J.,* in *S. v. Harvey,* 228 N.C. 62, 44 S.E. 2d 472.

And as *Chief Justice Merrimon* stated in *S. v. Goodson,* 107 N.C. 798, 12 S.E. 329, "This full summary of the incriminating facts, taken in the strongest view of them adverse to the prisoner, excite suspicion in the just mind that he is guilty, but such view is far from excluding the rational conclusion that some other unknown person may be the guilty party * * * ."

It then comes to this, there must be legal evidence of the fact in issue and not merely such as raises a suspicion or conjecture in regard to it.

Hence the judgment from which appeal is taken must be, and it is Reversed.

PARKER, J., dissents.