STATE OF NORTH CAROLINA v. JIMMY McKINNEY

No. 104

(Filed 26 June 1975)

1. **Criminal Law § 104— motion for nonsuit — failure to renew — sufficiency of evidence reviewed on appeal**

    G.S. 15-173 provides that the failure of the defendant to renew his motion for nonsuit at the close of all the evidence constitutes a waiver of his motion for nonsuit made prior to the introduction of his evidence, and numerous decisions of the Supreme Court hold that a motion for judgment as of nonsuit upon the evidence will not be considered on appeal when it is not renewed at the conclusion of all the evidence; however, since the effective date of the enactment of G.S. 15-173.1, the sufficiency of the State's evidence in a criminal case, if challenged by assignment of error and argued in the briefs, is reviewable upon appeal regardless of whether a motion for judgment of nonsuit was made by defendant in the trial court.

2. **Criminal Law § 106— motion for nonsuit — evidence favorable for State considered**

    A motion to nonsuit in a criminal case requires consideration of the evidence in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant nonsuit; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is considered by the Court in ruling upon the motion.

3. **Narcotics § 4— distribution of tetrahydrocannabinols charged — evidence of distribution of THC — nonsuit proper**

    In a prosecution for feloniously selling and distributing tetrahydrocannabinols, evidence was insufficient to be submitted to the jury where it consisted of testimony by two schoolboys that they purchased from defendant a substance which he represented to be THC, a doctor who examined one of the boys after he took some of the substance testified that the boy's condition was most likely caused by "a hallucination drug," tetrahydrocannabinols "can be a hallucinogenic drug," the doctor was familiar with THC and stated that "it's a substance similar to marijuana like drugs," but the doctor did not know what

the boy took or that he took anything, and no witness testified that THC was an abbreviation for tetrahydrocannabinols.

ON *certiorari* to the Court of Appeals to review its decision, 24 N.C. App. 259, 210 S.E. 2d 450 (1974), finding no error in the trial before *Martin (Harry C.), J.,* April 1974 Session, McDOWELL Superior Court.

Defendant, a sixteen-year-old schoolboy, was charged in separate indictments with (1) feloniously selling and distributing to Benjamin Franklin on 9 December 1973 a controlled substance, to wit: Tetrahydrocannabinols, and (2) feloniously selling and distributing the same drug on 10 December 1973 to John Peppers. The cases were consolidated for trial without objection.

Benjamin Franklin testified that he was fifteen years of age on 9 December 1973. He attended school during the day and worked at Hardee's in Marion from 4 p.m. until closing time. On that date he had a conversation with defendant Jimmy McKinney in the dining room at Hardee's and paid him $10.00 for a white substance in a small plastic bag which defendant represented to be "THC." "It was white and looked like sugar. It was more of a crystal form than solid." This witness stated he had never seen, taken or purchased THC before. He further stated that he showed the substance to his co-worker John Peppers and turned it over to Peppers "right after the purchase. I did not observe him do anything with it and he returned it to me 10 or 15 minutes later in the same package as when I gave it to him."

Benjamin Franklin further testified that he placed a pinch of the substance, about one-fourth of a thimbleful, in his mouth and swallowed it. It tasted bitter. He threw the remainder in a trash can because he was scared to have it with him. Fifteen or twenty minutes later he became so dizzy he did not know what he was doing. He blacked out but would awaken occasionally and black out again. He remembered going to the office of Dr. George Ellis in Old Fort but had no recollection of being hospitalized in Morganton. He suffered hallucinations "in which everything was dark and there were candles held up to faces that were melting, and I heard organ music. The hallucinations lasted about one day and I was in the hospital in Morganton two weeks. . . . I had never seen THC before and did not know that the substance was THC. I have not taken other drugs."

John Peppers, a fifteen-year-old schoolboy who also worked at Hardee's, testified that he tasted the substance sold to Benjamin Franklin; that the substance was white, like sugar crystals, and had a bitter taste. In thirty to forty-five minutes after tasting it he started getting dizzy and sick but continued working at Hardee's and then went home and to bed. The next night, December 10, 1973, he purchased from defendant Jimmy McKinney for $10.00 a substance which McKinney stated was THC. Peppers said he made the purchase at the request of two of his friends, took it to school the next day, and gave it to other boys there.

On cross-examination, Peppers stated: "I have not taken THC before nor since. I have never seen any THC. I have not taken other drugs. As to whether I know what THC looks like, I would recognize it now, by seeing it at Hardee's. That was the only time I have ever seen any substance called THC. . . . [A]nd except for that one occasion, I still don't know what it looks like."

Dr. George Ellis, stipulated to be a medical expert, testified that he examined Ben Franklin on 10 December 1973 at his office in Old Fort; that Franklin was acutely psychotic and completely incoherent, a condition which Dr. Ellis attributed to medication or drugs of some type—"most likely a hallucination drug." Dr. Ellis stated that tetrahydrocannabinols could have caused Franklin's symptoms. "I did not measure nor try to detect the drug. . . . Mr. Franklin did not tell me that he had taken any substance, but his sister told me that he had taken a substance." Dr. Ellis said he was familiar with the abbreviation THC and that "it's a substance similar to marijuana like drugs."

On cross-examination Dr. Ellis said: "It is true that other drugs can cause hallucinations such as described in Mr. Franklin. It is also true that people have hallucinations that have never taken drugs. I do not know what Mr. Franklin took or that he took anything."

Defendant's motion for nonsuit at the close of the State's evidence was denied.

Defendant, testifying as a witness in his own behalf, stated that he was sixteen years of age and was at Hardee's Restaurant on the nights of 9 and 10 December 1973. He further testified that he saw Ben Franklin working behind the counter but had

no conversation with him, did not tell Franklin he had THC and did not sell him anything. To the contrary, defendant said: "I have never had any THC in my possession. I do not know what it looks like. I have never sold Ben Franklin anything. I saw John Peppers on December 10 at Hardee's. . . . I did not sell him any THC. I did not sell him anything at all, nor have I ever sold him anything."

The jury returned a verdict of guilty on each charge. The cases were consolidated for judgment and defendant was sentenced to prison for a term of not less than one nor more than three years as a youthful offender pursuant to G.S. 148-49.2. The Court of Appeals found no error in the trial and judgment, and we allowed certiorari to review that decision.

*Story, Hunter & Goldsmith, P.A., by C. Frank Goldsmith, Jr., for defendant appellant.*

*Rufus L. Edmisten, Attorney General, and Raymond L. Yasser, Associate Attorney, for the State of North Carolina.*

HUSKINS, Justice.

The record discloses that defendant's motion for nonsuit at the close of the State's evidence was denied. Defendant thereupon offered evidence in his own behalf, and the State examined a witness in rebuttal. Both the State and the defendant then rested, but defendant's motion for dismissal or judgment as of nonsuit was not renewed. Nevertheless, failure to nonsuit is assigned as error and argued in the briefs filed in the Court of Appeals and in this Court.

[1] G.S. 15-173 provides that the failure of the defendant to renew his motion for nonsuit at the close of all the evidence constitutes a waiver of his motion for nonsuit made prior to the introduction of his evidence. Numerous decisions of this Court applying G.S. 15-173 hold that a motion for judgment as of nonsuit upon the evidence will not be considered on appeal when it is not renewed at the conclusion of all the evidence. *State v. Howell,* 261 N.C. 657, 135 S.E. 2d 625 (1964); *State v. Chapman,* 221 N.C. 157, 19 S.E. 2d 250 (1942); *State v. Kiziah,* 217 N.C. 399, 8 S.E. 2d 474 (1940); *State v. Helms,* 181 N.C. 566, 107 S.E. 228 (1921).

Chapter 762 of the 1967 Session Laws, codified as G.S. 15-173.1, reads as follows: "The sufficiency of the evidence of

State v. McKinney

the State in a criminal case is reviewable upon appeal without regard to whether a motion has been made pursuant to G.S. 15-173 in the trial court." Since the effective date of this enactment, 13 June 1967, the sufficiency of the State's evidence in a criminal case, if challenged by assignment of error and argued in the briefs, is reviewable upon appeal regardless of whether a motion for judgment of nonsuit was made by defendant in the trial court. We must therefore determine whether the evidence was sufficient to carry the case to the jury. We proceed as if the proper motion had been made under G.S. 15-173 and denied by the trial judge. *State v. Everette,* 284 N.C. 81, 199 S.E. 2d 462 (1973).

[2]  A motion to nonsuit in a criminal case requires consideration of the evidence in the light most favorable to the State, and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967). Contradictions and discrepancies are for the jury to resolve and do not warrant nonsuit. *State v. Bolin,* 281 N.C. 415, 189 S.E. 2d 235 (1972).; *State v. Greene,* 278 N.C. 649, 180 S.E. 2d 789 (1971). All of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is considered by the Court in ruling upon the motion. *State v. Cutler, supra;· State v. Walker,* 266 N.C. 269, 145 S.E. 2d 833 (1966). If there is substantial evidence—whether direct, circumstantial, or both— to support a finding that the offense charged has been committed and that defendant committed it, a case for the jury is made and nonsuit should be denied. *State v. Cook,* 273 N.C. 377, 160 S.E. 2d 49 (1968) ; *State v. Norggins,* 215 N.C. 220, 1 S.E. 2d 533 (1939).

Applying these governing principles to the evidence offered in this case, we hold the evidence was insufficient to carry the case to the jury for the reasons which follow.

[3]  Each bill of indictment charged defendant with the felonious sale and distribution of tetrahydrocannabinols, a controlled substance included in Schedule VI of the North Carolina Controlled Substances Act. *See* G.S. 90-94 (1974 Cum. Supp.). The fact in issue between the State and the defendant is whether defendant violated the North Carolina Controlled Substances Act by distributing the drug tetrahydrocannabinols.

There must be legal evidence of the fact in issue, and evidence which only raises a suspicion or conjecture is insufficient.

*State v. Bass,* 253 N.C. 318, 116 S.E. 2d 772 (1960). Evidence which merely shows that defendant might have distributed tetrahydrocannabinols, or raises a suspicion that he did, is insufficient to support a verdict and should not be left to the jury. *State v. Guffey,* 252 N.C. 60, 112 S.E. 2d 734 (1960); *State v. Glenn,* 251 N.C. 156, 110 S.E. 2d 791 (1959).

To prove that defendant distributed tetrahydrocannabinols, the State offered the testimony of two schoolboys, Benjamin Franklin and John Peppers, and Dr. George Ellis. Franklin testified that he paid defendant $10.00 for a white substance in a small plastic bag which defendant represented to be "THC." The substance was white and looked like sugar. He swallowed "a pinch" of the substance and threw the remainder in a trash can. He became dizzy, suffered blackouts and hallucinations, and was treated by Dr. Ellis. Franklin testified he had never seen, taken or purchased THC before and did not, in fact, know that the substance was THC.

John Peppers testified that he tasted the substance sold to Benjamin Franklin; that the substance was white, like sugar crystals, and had a bitter taste. The next night Peppers paid defendant $10.00 for a substance represented by defendant to be "THC" and gave it to two of his friends at school. Peppers stated that he had not taken THC before or since and that he still doesn't know what it looks like "except for that one occasion."

Dr. George Ellis, a medical expert, testified that he examined Ben Franklin on 10 December 1973 at his office; that Franklin was acutely psychotic and completely incoherent, a condition caused most likely by "a hallucination drug." Dr. Ellis stated that tetrahydrocannabinols "can be a hallucinogenic drug" and that a sufficient quantity of that drug could have caused Franklin's symptoms. Dr. Ellis said he was familiar with the abbreviation THC. He was then asked: "What chemical substance does those abbreviations represent?" Dr. Ellis replied: "It's a substance similar to marijuana like drugs." He stated on cross-examination that other drugs can cause hallucinations as described in Franklin's case and that people have hallucinations who have never taken drugs. He said he did not know what Franklin took or that he took anything.

When the foregoing evidence is considered in the light most favorable to the State, giving the State every reasonable in-

---

State v. McKinney

---

tendment and every reasonable inference to be drawn therefrom, it fails to show that defendant distributed tetrahydrocannabinols as charged in the bills of indictment. Defendant represented to Franklin and Peppers that the substance was THC —whatever that is. No witness testified that THC was an abbreviation for tetrahydrocannabinols. The testimony of Dr. Ellis that THC is "a substance similar to marijuana like drugs" leaves unanswered the basic question whether THC is the abbreviation for tetrahydrocannabinols. This is so because there may be many substances "similar to marijuana like drugs," and tetrahydrocannabinols may or may not be one of them. Did defendant sell tetrahydrocannabinols to Franklin and Peppers? The witnesses do not say. Before there can be a lawful conviction the State must prove (1) that the crime charged has been committed and (2) that it was committed by the person charged. *State v. Bass,* 253 N.C. 318, 116 S.E. 2d 772 (1960); *State v. Edwards,* 224 N.C. 577, 31 S.E. 2d 762 (1944); *State v. Norggins,* 215 N.C. 220, 1 S.E. 2d 533 (1939). The State's evidence fails to meet these requirements.

To withstand a motion for judgment as of nonsuit there must be substantial evidence of all material elements of the offense charged. Whether the State has offered such substantial evidence is a question of law for the trial court. *State v. Everette,* 284 N.C. 81, 199 S.E. 2d 462 (1973); *State v. Evans,* 279 N.C. 447, 183 S.E. 2d 540 (1971); *State v. Allred,* 279 N.C. 398, 183 S.E. 2d 553 (1971). The evidence here is insufficient to support a verdict and should not have been left to the jury.

Since the insufficiency of the State's evidence requires dismissal, it becomes unnecessary to discuss other errors assigned.

The decision of the Court of Appeals is reversed. The case is remanded to that court for further remand to the Superior Court of McDowell County for entry of judgment in that court dismissing the charges as of nonsuit in accordance with this opinion.

Reversed and remanded.