STATE OF NORTH CAROLINA v. RAPHAEL SMITH

No. 7813SC721

(Filed 6 March 1979)

1. **Criminal Law § 1— corpus delicti—defendant as perpetrator—proof required**

    Proof of a charge in a criminal case requires the proving of two distinct matters: (1) the *corpus delicti* or, stated differently, that the act complained of was done, and (2) that it was done by the person or persons charged.

2. **Criminal Law § 106— motion for nonsuit—substantial evidence test**

    In order to withstand motions for judgment as in the case of nonsuit or for dismissal, the State must present with respect to each essential element of the crime charged substantial evidence, or more than a scintilla of evidence, and those tests are in fact identical and only one test which is most frequently designated the "substantial evidence test."

3. **Criminal Law § 106— motion for nonsuit—exclusion of possibility of innocence not required**

    The trial court is not required to determine that the evidence excludes every reasonable hypothesis of innocence prior to denying a defendant's motion to dismiss; rather, in ruling upon the defendant's motion to dismiss or for judgment as in the case of nonsuit, the trial court is limited solely to the function of determining whether a reasonable inference of the defendant's guilt of the crime charged *may* be drawn from the evidence.

4. **Homicide § 21.9— deceased's high blood alcohol level—injuries to deceased—death as murder—sufficiency of evidence**

    A doctor's testimony constituted substantial evidence sufficient to support a reasonable inference that the crime of murder had been committed where the doctor, who specialized in pathology, testified that it was possible that the amount of alcohol in the blood of deceased caused her death, but it was his opinion that deceased died of a combination of high blood alcohol level and massive injuries which suppressed the respiratory reflexes of the lungs, and his testimony also indicated that these injuries could have been induced by a tobacco stick which was found broken into pieces at the scene of the death of deceased.

5. **Homicide § 21.9— voluntary manslaughter—defendant as perpetrator—sufficiency of evidence**

Evidence in a homicide prosecution was substantial evidence from which a reasonable conclusion could be drawn that defendant committed the crime charged and which required submission of the case to the jury where such evidence tended to show that deceased was murdered in her own home; her husband was present at the home during the entire night on which the murder took place; and a thorough investigation of the outside and inside of the home as well as the immediately surrounding area revealed no indication of an intruder or the presence of other persons, thus negating any implications arising from defendant's statement which might have been construed as tending to indicate that an intruder or some other person entered the home and killed defendant's wife.

APPEAL by defendant from *Herring, Judge.* Judgment entered 30 March 1978 in Superior Court, BRUNSWICK County. Heard in the Court of Appeals 28 November 1978.

The defendant was indicted for first degree murder. Upon his plea of not guilty, the jury returned a verdict of guilty of voluntary manslaughter. From judgment sentencing him to imprisonment for a term of not less than seven nor more than ten years, the defendant appealed.

The State's evidence tended to show that the defendant and his wife lived together in a mobile home. The defendant's brother went to the defendant's mobile home on the morning of 17 December 1977, and there discovered the body of the defendant's wife on the floor. The defendant's brother called to Mrs. Smith twice. When she failed to answer, he went directly to his home which was immediately adjacent and got his watch. He returned with the watch and attempted to take Mrs. Smith's pulse when he noted that "she felt kind of funny." The defendant's brother picked up a curtain from the floor, covered Mrs. Smith's body and then called the Sheriff. Sergeant John Carr Davis of the Uniform Division of the Brunswick County Sheriff's Department arrived at the defendant's mobile home at 10:06 a.m. At the request of the defendant's mother and sister, Davis entered the defendant's home and found the defendant sitting on a couch and apparently intoxicated. He asked the defendant where his wife was, and the defendant directed him to the wrong room. He again questioned the defendant concerning his wife's whereabouts and was told, "[S]he's in the back bedroom, and I think she's dead." Davis then

found the body and allowed members of the rescue squad to enter the home and confirm the death.

Shortly thereafter, Detective C. Y. Pittman of the Brunswick County Sheriff's Department arrived at the defendant's home. He found the defendant sitting on a couch in the living room and noted that the defendant appeared to be incoherent and intoxicated. Detective Pittman then began his investigation by examining the premises. The body of the victim was lying in the doorway to a back bedroom in the same position as when it was found by the defendant's brother. A hammer was lying near the body. In a second bedroom nearby, a double bed was located. The mattress had been pulled from the bed. It was soaked with water and lying on the floor. There was also "a tremendous amount of broken straw from a broom" in the second bedroom. The broom itself was also found in this bedroom. The handle was off the broom and was found next to the mattress. Straw was also located along the hallway leading to the body in the doorway of the first bedroom and bits and pieces of the straw were found around the body.

Detective Pittman also found five pieces of a tobacco stick in the second bedroom. The pieces of stick were sent to the laboratory of the State Bureau of Investigation for examination where it was concluded that they were originally all parts of one stick. One piece of this stick was jagged on the end in "the shape of a stake." Several hairs were found entwined in the splinters at the end of the piece of the stick. These were examined by the Federal Bureau of Investigation which reported that they were: "Numerous white, gray, and black head hair of Negroid origin. . . ." The Federal Bureau of Investigation further reported that the hairs found on the end of the stick exhibited the same microscopic characteristics as hairs taken from the head of the deceased. Foreign matter analyzed as human blood was also found on some of the pieces of stick.

In the living room, Detective Pittman found an empty half gallon liquor bottle. In the kitchen, he found a drawer of one of the cabinets on the floor with its contents spilled onto the floor. In a third bedroom he found a robe of "a silky material type" which was spotted with a foreign material later analyzed and found to be human blood.

Detective Pittman found no other signs of a disruption or disturbance inside or outside the mobile home. His further inspection around the home revealed nothing else out of the ordinary. He checked the windows and doors and found them to be in working order. At the time of his investigation on the morning of 17 December 1977, several law enforcement officers were in the home. The front door was open, and the back door was unlocked.

Detective Pittman interviewed the defendant on January 10, 1978, after advising him of his constitutional rights. The defendant's statement was reduced to writing, signed on that date by the defendant, and witnessed by his attorney and Detective Pittman. After a *voir dire* hearing at trial, the statement was admitted into evidence without objection. In his statement the defendant indicated that he came home from work around 6:00 p.m. on 16 December 1977. He had a half gallon of liquor with him and began drinking with his wife. He did not leave the mobile home between the time he got home from work and the time his wife was found. He remembered her being found in bed. He and his wife had gone to the back bedroom to sleep, but he could not remember the time. He had carried the bottle of liquor to the bedroom with him and was drinking and could not remember where she slept. He remembered that when he found her she would not wake up. He went to the kitchen, got a pan of water and threw it on her several times in an attempt to wake her. He could not remember picking his wife up and moving her to another room. He remembered going to the store the next day and coming back when he recognized his wife was dead. The defendant could not remember having had any visitors.

The defendant's mother testified for the State that the defendant's wife came to her house at about 10:00 p.m. on 16 December 1977. The defendant's wife had been drinking at the time but did not have any bruises on her and was not hurt in any way.

An aunt of the defendant's wife testified for the State that she saw the defendant and his wife during the week prior to 17 December 1977. The two were standing in her yard on that occasion when the defendant slapped his wife and took out his knife. However, he did not attempt to cut his wife at that time.

Dr. Henry Singletary, a medical doctor specializing in the field of pathology, testified that he examined the body of the de-

ceased wife on 17 December 1977. His examination revealed very extensive bruising around the deceased's left eye and marks that were long and slim, linear on her forehead. There was also bruising about her cheeks, lips, neck, and shoulders. Her left eye was blackened more than her right eye. Her left ear was bruised and exhibited a swelling deformity and linear marks. Dr. Singletary cut open the scalp of the deceased and found hemorrhaging and a large flat blood clot about four inches long. Bruises on the deceased's elbows, arms, breasts and buttocks were so numerous that they were confluent or ran into each other. There was a laceration on the right side of her abdomen which was relatively superficial and went just under the skin and into the fatty tissue beneath. Several of her ribs were fractured. She additionally suffered from a fatty liver of a type seen in connection with the use of alcohol. Her lungs contained fatty globules of a type referred to as an embolism which resulted from mobilization of fatty tissue into the blood stream by the force of trauma. Her blood contained .35 percent alcohol to blood by weight.

Dr. Singletary testified that in his opinion the deceased died of a combination of two factors. One was the very high blood alcohol level. The other was "massive injuries to the soft tissues and mobilization of the fat into the lungs and suppression of respiratory reflexes due to chest injuries, the fat in the lungs, and the alcohol itself." In his opinion, the marks and bruises found on the body could have been caused by the tobacco stick that was introduced into evidence. On cross-examination, Dr. Singletary indicated that it was possible that consumption of alcohol alone could have caused the death of the deceased.

The defendant elected not to present evidence.

*Attorney General Edmisten, by Special Deputy Attorney General T. Buie Costen, for the State.*

*Ray H. Walton for defendant appellant.*

MITCHELL, Judge.

The sole assignment of error presented and argued on appeal by the defendant is directed to the trial court's denial of his motion to dismiss made pursuant to G.S. 15A-1227. The defendant contends that the State failed to present sufficient evidence to

sustain his conviction and that his motion should have been allowed. In support of this contention, the defendant argues that the State's evidence failed to show either that a crime was committed or that the defendant committed any criminal act.

A motion for dismissal pursuant to G.S. 15A-1227 tests the sufficiency of the evidence to sustain a conviction. In that respect it is identical to a motion for judgment as in the case of nonsuit under G.S. 15-173. *See State v. Vaughan*, 268 N.C. 105, 150 S.E. 2d 31 (1966). Therefore, controlling cases dealing with the sufficiency of evidence to withstand a motion for judgment as in the case of nonsuit are equally applicable to the sufficiency of the evidence to withstand a motion for dismissal pursuant to G.S. 15A-1227.

[1] Proof of a charge in a criminal case requires the proving of two distinct matters: (1) the *corpus delicti* or, stated differently, that the act complained of was done, and (2) that it was done by the person or persons charged. Proof of both is necessary to sustain a conviction. *State v. Thomas*, 296 N.C. 236, 246, 250 S.E. 2d 204, 209 (1978); *State v. Bass*, 253 N.C. 318, 116 S.E. 2d 772 (1960); *State v. Norggins*, 215 N.C. 220, 1 S.E. 2d 533 (1939).

[2] Although it is clear that the State must offer evidence of each element of the offense charged and evidence that it was committed by the defendant, until recent years the test governing the amount or type of evidence required on each of these points has been stated in less than consistent terms. *E.g.: State v. Kelly*, 243 N.C. 177, 90 S.E. 2d 241 (1955) ("more than a scintilla of competent evidence"); *State v. Gordon*, 225 N.C. 757, 36 S.E. 2d 143 (1945) ("any competent evidence"); *State v. Mann*, 219 N.C. 212, 13 S.E. 2d 247, 132 A.L.R. 1309 (1941) ("any evidence"); *State v. Shermer*, 216 N.C. 719, 6 S.E. 2d 529 (1940) ("more than a mere scintilla"); *State v. McLean*, 209 N.C. 38, 182 S.E. 700 (1935) ("any evidence reasonably sufficient to go to the jury"). The more modern cases, however, seem to agree that the amount of evidence required as to each essential element in order to withstand motions for judgment as in the case of nonsuit or for dismissal is controlled by the "substantial evidence" or "more than a scintilla of evidence" test. In *State v. Weinstein*, 224 N.C. 645, 31 S.E. 2d 920 (1944), the Supreme Court of North Carolina strongly implied that these two tests are in fact identical and interchangeable when it specifically stated that, in order to overcome such motions, the State was re-

quired to produce "any substantial evidence—more than a scintilla—to prove the allegations of the bill." To this day, it appears that the "more than a scintilla of evidence" test and the "substantial evidence" test are in reality only one test which is most frequently designated the "substantial evidence test." *Compare, e.g., State v. Agnew,* 294 N.C. 382, 241 S.E. 2d 684 (1978), *with State v. Thomas,* 296 N.C. 236, 250 S.E. 2d 204 (1978), *and State v. Snead,* 295 N.C. 615, 247 S.E. 2d 893 (1978).

The interchangeable use of two designations for one test, although at times somewhat confusing, would appear correct. The requirement that the State's evidence of each element be "substantial" is simply a requirement that it be existing and real, not just seeming or imaginary. Webster's Third New International Dictionary 2280 (1971). Therefore, anything more than a scintilla of evidence is "substantial evidence." *See State v. Weinstein,* 224 N.C. 645, 648, 31 S.E. 2d 920, 923 (1944). Having so determined we must proceed to apply the substantial evidence test to the case at hand.

[3] The defendant contends that the substantial evidence offered by the State must be consistent with guilt and inconsistent with every reasonable hypothesis of innocence in order to overcome his motion to dismiss. We are advertent to a line of cases tending to support this position. *See, e.g.: State v. Langlois,* 258 N.C. 491, 128 S.E. 2d 803 (1963); *State v. Bass,* 253 N.C. 318, 116 S.E. 2d 772 (1960); *State v. Fulk,* 232 N.C. 118, 59 S.E. 2d 617 (1950); *State v. Frye,* 229 N.C. 581, 50 S.E. 2d 895 (1948); *State v. Minton,* 228 N.C. 518, 46 S.E. 2d 296 (1948); *State v. Coffey,* 228 N.C. 119, 44 S.E. 2d 886 (1947); *and State v. Harvey,* 228 N.C. 62, 44 S.E. 2d 472 (1947). However, it is clear that the law is otherwise. The trial court is not required to determine that the evidence excludes every reasonable hypothesis of innocence prior to denying a defendant's motion to dismiss. *State v. Poole,* 285 N.C. 108, 203 S.E. 2d 786 (1974); *State v. Horton,* 275 N.C. 651, 170 S.E. 2d 466 (1969); *State v. Burton,* 272 N.C. 687, 158 S.E. 2d 883 (1968); *State v. Davis,* 246 N.C. 73, 97 S.E. 2d 444 (1957); *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431 (1956); *State v. Griffin,* 18 N.C. App. 14, 195 S.E. 2d 569 (1973). In ruling upon the defendant's motion to dismiss or for judgment as in the case of nonsuit, the trial court is limited *solely* to the function of determining whether a reasonable inference of the defendant's guilt of the crime charged *may* be

drawn from the evidence. *State v. Thomas*, 296 N.C. 236, 250 S.E. 2d 204 (1978). If the trial court determines that a *reasonable* inference of the defendant's guilt *may* be drawn from the evidence, it must deny the defendant's motion and send the case to the jury even though the evidence may also support reasonable inferences of the defendant's innocence.

The controlling rule of law was best set forth in *State v. Stephens*, 244 N.C. 380, 383-84, 93 S.E. 2d 431, 433-34 (1956). There, the Supreme Court of North Carolina speaking through Justice Higgins stated that:

> We are advertent to the intimation in some of the decisions involving circumstantial evidence that to withstand a motion for nonsuit the circumstances must be inconsistent with innocence and must exclude every reasonable hypothesis except that of guilt. We think the correct rule is given in *S. v. Simmons*, 240 N.C. 780, 83 S.E. 2d 904, quoting from *S. v. Johnson*, 199 N.C. 429, 154 S.E. 730: "If there be any evidence tending to prove the fact in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury." The above is another way of saying there must be substantial evidence of all material elements of the offense to withstand the motion to dismiss. It is immaterial whether the substantial evidence is circumstantial or direct, or both. To hold that the court must grant a motion to dismiss unless, in the opinion of the court, the evidence excludes every reasonable hypothesis of innocence would in effect constitute the presiding judge the trier of facts. Substantial evidence of guilt is required before the court can send the case to the jury. Proof of guilt beyond a reasonable doubt is required before the jury can convict. What is substantial evidence is a question of law for the court. What that evidence proves or fails to prove is a question of fact for the jury.

Therefore, it is for the trial court to determine whether substantial evidence which will support a reasonable inference of the defendant's guilt has been introduced. The trial court having found that such evidence has been introduced, it is *solely* for the jury to

determine whether the facts taken singly or in combination satisfy them beyond a reasonable doubt that the defendant is in fact guilty. *State v. Thomas*, 296 N.C. 236, 244, 250 S.E. 2d 204, 209 (1978).

[4] The State's evidence in the present case was clearly sufficient to support a reasonable inference that the crime charged had been committed. Dr. Henry Singletary, a medical doctor specializing in pathology, testified that it was possible that the amount of alcohol in the blood of the deceased caused her death. He specifically testified, however, that it was his opinion that the deceased died of a combination of a high blood alcohol level and massive injuries which suppressed the respiratory reflexes of the lungs. His testimony also indicated that these injuries could have been induced by the tobacco stick which was found broken into pieces at the scene of the death of the deceased. Therefore, Dr. Singletary's testimony constituted substantial evidence sufficient to support a reasonable inference that the crime of murder had been committed. This being the case, it was incumbent upon the trial court to permit the jury to determine whether the crime charged had in fact been committed.

Additionally, we think that substantial evidence was introduced to support a reasonable inference that the defendant committed the crime charged. In considering a motion for judgment as in the case of nonsuit or, as in the present case, a motion for dismissal pursuant to G.S. 15A-1227, the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. *State v. Thomas*, 296 N.C. 236, 250 S.E. 2d 204 (1978). All evidence admitted during the trial, whether competent or incompetent, which is favorable to the State must be taken as true, and contradictions or discrepancies therein must be resolved in the State's favor. *State v. Agnew*, 294 N.C. 382, 241 S.E. 2d 684 (1978). The trial court in considering such motions is concerned only with the sufficiency of the evidence to carry the case to the jury and not with its weight. *State v. McNeil*, 280 N.C. 159, 185 S.E. 2d 156 (1971).

[5] The defendant's statement, whether it be viewed as an admission or as a confession, was introduced as evidence and indicated that he was in his home during the entire night of 16 De-

cember 1977. The physical evidence located at the scene revealed the pieces of a stick which could have caused the wounds resulting in his wife's death and to which were adhered human blood together with human hairs which exhibited the same microscopic characteristics as hairs taken from her head. The "tremendous amount of broken straw from a broom" and the fact that the stick was broken into numerous pieces would support a reasonable inference that an affray sufficient to be noticed occurred in the home on the evening of the death of the deceased. Other testimony indicated the deceased was alive and uninjured with no bruises apparent at 10:00 p.m. on 16 December 1977. She was found dead shortly before 10:00 a.m. the following day with bruises covering most of her body and severe internal injuries and broken bones.

In passing on a motion to dismiss or for judgment as in the case of nonsuit, evidence favorable to the State is to be considered as a whole in order to determine its sufficiency. "This is especially necessary in a case, such as ours, when the proof offered is circumstantial, for rarely will one bit of such evidence be sufficient, in itself, to point to a defendant's guilt." *State v. Thomas*, 296 N.C. 236, 245, 250 S.E. 2d 204, 209 (1978). We find the foregoing evidence in the present case, taken as a whole and considered in the light most favorable to the State to be substantial and sufficient to warrant a reasonable inference of the defendant's guilt. Whether it also excluded every reasonable hypothesis of innocence was not a question for the trial court, and its action in denying the motion was correct.

We are, of course, aware that those portions of the defendant's statement, if any, which tend to rebut the inference of guilt are binding upon the State if uncontradicted by other evidence. The State is not precluded, however, from showing that the facts were different in such cases. This showing may be made by testimony of other witnesses, by other statements of the defendant and from the facts and circumstances of the occurrence itself. 1 Stansbury's N.C. Evidence § 40, p. 117 and n. 92 (Brandis Rev. 1973). Here, certain portions of the defendant's statement in the nature of an admission placed him at the scene of the crime and in the company of the victim. He contends, however, that other portions of his statement tend to be exculpatory as they tend to show that someone else may have had the opportunity to kill his

wife. Assuming arguendo that portions of the defendant's statement tended to be exculpatory, nevertheless, those portions were contradicted by physical evidence showing the circumstances surrounding the crime to be otherwise. The investigating officer specifically testified that he made a thorough search entirely around the outside of the mobile home for any sign of a disruption or anything out of the ordinary. A similar search was made of the interior of the mobile home and all doors and windows were checked. The search of the interior and exterior of the home produced no evidence tending to establish a breaking or entering or tending to corroborate any implications found in the defendant's statement to the effect that an intruder or some other person may have entered the home and committed the alleged crime. The arresting officer's testimony in this regard constituted some evidence, however slight, tending to negate and thereby contradict any possible implications that another person may have entered the home and committed the crime charged. Having made such showing, the State was not bound by any possible exculpatory inferences in the defendant's statement tending to indicate that another person may have had the opportunity to commit the crime charged.

· The defendant places great reliance upon the case of *State v. Langlois*, 258 N.C. 491, 128 S.E. 2d 803 (1963), for the proposition that the evidence in this case reveals only that he had a "mere opportunity" to commit the crime and will not support the trial court's ruling in permitting the case to go to the jury. *Langlois* is, however, easily distinguishable on its facts from the present case. In *Langlois* the deceased was a three and one-half year old child who "had been suffering from anemia most of his life" and who was described as being clumsy and as falling often. The child's death in that case resulted from extensive peritonitis caused by the rupture of the small intestine which had occurred twenty-four to forty-eight hours prior to death. There appears to have been no evidence as to the whereabouts of the child for most of the period of time during which the injury most probably occurred. The facts in *Langlois* did not present a case such as the present case in which there was substantial evidence that the defendant was present when the blows that killed his wife were struck. Therefore, we do not consider that case to be controlling authority here.

State v. Smith

The case of *State v. Coffey*, 228 N.C. 119, 44 S.E. 2d 886 (1947), is another case frequently cited for the proposition that evidence introduced reveals only "mere opportunity" to commit a crime which will not support a trial court's ruling permitting a given case to go to the jury. We think that, for the reasons stated by Justice Seawell in his dissent in *Coffey*, more recent cases have cast serious doubt upon the reliability of *Coffey* as binding authority with regard to the nature and amount of evidence required to show more than mere opportunity to commit a crime and, thereby, to sustain a conviction. *State v. Davis*, 246 N.C. 73, 97 S.E. 2d 444 (1957); *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431 (1956). However, to whatever extent *Coffey* may still be taken as authoritative concerning such issues, it is easily distinguishable from the present case. In *Coffey* the deceased was killed while guarding a wagon load of whiskey which had been left beside a road apparently open to the general public. The defendant made an admission that he was present at the time of the acts causing the death of the deceased but contended that others had committed them. Various other witnesses, including the children of the deceased, indicated that others had been seen in the vicinity of the wagon at about the time the deceased must have been struck. Our Supreme Court found *inter alia* that this evidence established mere opportunity for the defendant to commit the crime and was not sufficient to require the submission of the case to the jury.

Here, however, the evidence presents a situation in which the jury could reasonably infer that the deceased was murdered in her own home in the presence of her husband. In addition, there was evidence tending to show that a thorough investigation of the outside and inside of the home as well as the immediately surrounding area revealed no indication of an intruder or the presence of other persons. This evidence tended to negate any implications arising from the statement of the defendant which might have been construed as tending to indicate that an intruder or some other person had entered the home and killed the defendant's wife. We find that such evidence for the State was substantial evidence from which a reasonable conclusion could be drawn that the defendant committed the crime charged and which required the submission of the case to the jury. Thereafter, it was solely the province of the jury to determine whether this evidence also established the defendant's guilt beyond a reason-

able doubt. *E.g., State v. Poole*, 285 N.C. 108, 203 S.E. 2d 786 (1974); *State v. Horton*, 275 N.C. 651, 170 S.E. 2d 466 (1969); *State v. Burton*, 272 N.C. 687, 158 S.E. 2d 883 (1968); *State v. Davis*, 246 N.C. 73, 97 S.E. 2d 444 (1957); *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431 (1956). *But see, e.g., State v. Langlois*, 258 N.C. 491, 128 S.E. 2d 803 (1963); *State v. Coffey*, 228 N.C. 119, 44 S.E. 2d 886 (1947).

It appears that the holdings of the Court in both *Langlois* and *Coffey* were based upon an application of the rule requiring judgment as in the case of nonsuit or dismissal when the evidence considered in the light most favorable to the State failed to exclude every reasonable hypothesis of innocence. Therefore, we think that statements in those cases relative to situations in which mere opportunity to commit a crime charged have been shown are *obiter dictum* and not entitled to the same weight as authority given to statements which comprise the basis of a holding. For the reasons previously given, we think our Supreme Court has rejected the rule that the State's evidence must exclude every reasonable hypothesis of innocence before a case may be sent to the jury, which formed the basis of its holdings in *State v. Langlois*, 258 N.C. 491, 128 S.E. 2d 803 (1963) and *State v. Coffey*, 228 N.C. 119, 44 S.E. 2d 886 (1947), and that those cases are, therefore, no longer to be viewed as authoritative concerning such matters.

To hold otherwise would be to license any man to brutally murder his wife with impunity upon finding himself alone with her in their home. He would then be free to testify without contradiction by her that she was killed by some other person or that he was drunk and some other person must have killed her. When the State was unable to contradict his tale by any means other than circumstantial evidence, as would be the situation in most cases, he would be set free to scoff at the law and proclaim his criminal deed to the general public without fear of again being placed in jeopardy. We simply do not believe this to be or to have been the law of this jurisdiction. Therefore, we find no error in the trial court's denial of the defendant's motion to dismiss made pursuant to G.S. 15A-1227.

The defendant received a fair trial free from prejudicial error, and we find

No error.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.