STATE OF NORTH CAROLINA v. DENNIS G. BEATTY

No. 8210SC918

(Filed 18 October 1983)

1. **Social Security and Public Welfare § 1— pharmacist—provider of medical assistance—Medicaid fraud**

   Defendant pharmacist who dispensed medicines to Medicaid patients was a "provider of medical assistance" within the purview of the Medicaid fraud statute, and the State's evidence was sufficient to support conviction of defendant on various Medicaid fraud charges where it tended to show that, with respect to medicines defendant purportedly dispensed to certain Medicaid patients, the State was billed for medicines which were never dispensed to the patients named on the prescriptions; was billed for more pills than some patients received; was billed for more expensive pills than certain patients received; and was billed for higher priced trade name drugs when low cost generic drugs were supplied the patients. Former G.S. 108-61.5(a)(1), now G.S. 108A-63.

2. **Criminal Law § 33— evidence of similar conditions**

   In a prosecution for Medicaid fraud, testimony as to procedures for obtaining Medicaid payments followed by the pharmacy for which defendant worked immediately prior to and after the period in question was admissible to show that the same procedures were used during the period in question.

**3. Criminal Law § 34.7— evidence of other crimes—admissibility to show knowledge, intent and design**

     In a prosecution for Medicaid fraud, evidence tending to show that defendant was causing the State to be overcharged for medicines for Medicaid patients a year and a half before the period in question was admissible to show guilty knowledge, intent, plan and design by defendant.

APPEAL by defendant from *Jolly, Judge.* Judgment entered 29 June 1981 in Superior Court, WAKE County. Heard in the Court of Appeals 8 March 1983.

After a jury trial, defendant, indicted in forty-eight counts for Medicaid fraud in violation of G.S. 108-61.5(a)(1), was found guilty of twenty-nine counts.

The State's evidence tended to show that: Belwood Pharmacy, Inc. of Belwood, North Carolina regularly dispensed drugs to the residents of two nearby nursing or rest homes, whose medicine and drug needs were paid for by the State under its Medicaid program. The defendant had no proprietary or stock interest in the pharmacy, but was employed as its pharmacist-manager from 1974 until November, 1980. As such he filled all prescriptions the pharmacy received, dispensed the medicines ordered, rewrote and updated prescriptions as needed, wrote the price of each order on the prescription involved, and turned the prescriptions over to a secretary, who periodically filled out bills or claims for payment based thereon and submitted them to the state, which then paid the pharmacy. Between November 1, 1979 and March 31, 1980, as alleged in the indictment, the state was billed for medicines that were never dispensed to the patients named on the prescriptions; was billed for more pills than some patients received; was billed for larger, more expensive pills than certain patients received; and was billed for higher priced trade name drugs when low cost generic drugs were supplied the patients designated.

The trial lasted nearly four weeks. The defendant presented no evidence.

*Attorney General Edmisten, by Assistant Attorneys General Donald W. Grimes and Francis W. Crawley, for the State.*

*Lamb, Young & McLain, by William E. Lamb, Jr. and Brenda S. McLain, for defendant appellant.*

PHILLIPS, Judge.

[1]  The main question presented by this appeal is whether the evidence presented against defendant was sufficient to convict him of the crimes charged. To sustain a conviction of crime in this state, whether the evidence is circumstantial or otherwise, it is no longer necessary that the State's evidence point "unerringly" to the defendant's guilt, as some of the earlier decisions stated. The test now is whether substantial evidence was presented as to each element of the crime charged and that the defendant committed it. *State v. Smith*, 40 N.C. App. 72, 252 S.E. 2d 535 (1979); *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431 (1956). The part of the Medicaid fraud statute [then G.S. 108-61.5(a)(1); now G.S. 108A-63] that defendant was convicted of violating states:

> (a) It shall be unlawful for any provider of medical assistance under this Part to knowingly and willfully make or cause to be made any false statement or representation of a material fact:
>
>> (1) In any application for payment under this Part, or for use in determining entitlement to such payment.

Thus, the State was obliged to prove that (1) defendant was a provider of medical assistance under the Medicaid program, and (2) he knowingly and willfully (3) made or caused to be made false statements or representations (4) of material facts (5) in applications for payment under Medicaid. The evidence presented by the State clearly established all these elements and the defendant's conviction cannot be disturbed.

The element of the crime that defendant most strongly argues was not covered by the evidence was that he was a *"provider* of medical assistance" under the statute. His basis for so contending is that the pharmacy was designated as the "provider" in the contract entered into with the state, which enabled it to dispense drugs to eligible patients and to be paid for them by Medicaid. But, obviously, hospitals, clinics, and pharmacies that enter into contracts with the state are not the only ones that provide medical assistance and services to patients under Medicaid. Since defendant actually furnished and provided medical assistance to Medicaid patients, we must construe him to

be a "provider" under the statute, unless some other provision of law gives the word a different meaning from the one commonly understood. None does; whereas, several statutory and regulatory provisions we are required to follow give the word its usual, unrestricted meaning.

These statutes and regulations are to be found in the United States Code and the Code of Federal Regulations. This is because the state Medicaid programs depend upon and to a great extent are controlled by the federal Medicaid program, which was established by the Congress enacting 42 U.S.C. § 1396, *et seq.*, designated as Title XIX of the Social Security Act. The Act requires participating states, as a condition for receiving federal monies, to create companion programs of their own that comply with all provisions of Title XIX. North Carolina created its Medicaid program by Part 5 of Article 2 of Chapter 108 of the General Statutes, and accepted and adopted all of the provisions of Title XIX by G.S. 108-61. Thus, our Medicaid program must be interpreted in light of the federal requirements for it that the legislature adopted. Under Title XIX, drugs prescribed for and dispensed to eligible patients are part of the medical care and services covered by Medicaid and regulations governing all aspects of Medicaid were adopted. These regulations may be found in the Code of Federal Regulations. One of them defines a Medicaid "provider" as "any individual or entity furnishing Medicaid services under a provider agreement with the [state] Medicaid agency." 42 C.F.R. § 430.1 (1982). Another refers to a "provider" as "an individual or entity which furnishes items or services for which payment is claimed under Medicaid." 42 C.F.R. § 455.300(a) (1982). These regulations are as much a part of our law as they would be if they had been read three times and adopted by the General Assembly and explicitly set forth in the General Statutes.

Thus, in dispensing the drugs referred to in the indictment, defendant was a "provider" of medical assistance or services under both the statute and the pharmacy's provider agreement with the state. That the pharmacy was also a "provider" does not alter defendant's status in the least.

That the other elements of the crime involved were also established by the State's evidence need not detain us long. The evidence that statements defendant made and caused to be made

about the various medicines furnished and their prices were false has already been recited and need not be repeated; that the statements were material and used in applying for payment is self-evident. Finally, the defendant's knowledge and wilfulness is indicated by much evidence, particularly that which tended to show that he caused the state to be overcharged in numerous instances by his failure to supply many patients with the medicines that they were billed for. To say the least, the State's evidence was not insufficient to support the defendant's conviction.

[2] During the trial, Mavine Willis, a long-time employee of Belwood Clinic, which operated in conjunction with the pharmacy, testified as to the procedures that the defendant and the pharmacy followed in filling prescriptions, pricing them, and applying for Medicaid payments before November, 1979 and after March, 1980. Defendant contends this testimony was irrelevant, in that the offenses he allegedly committed occurred during the very period that she did not testify in regard to. Her testimony was as it was because, except for three days, she was off from work from November 2, 1979 until April, 1980, due to the illness of her boss, the Clinic director. But during the three years before November, 1979 and for several months after March, 1980, according to her testimony, she worked regularly and closely with the pharmacy and the defendant and the same procedures were followed during both periods. In our opinion, the court did not err in receiving this testimony. It has long been recognized that conditions at one time, if not too remote, are admissible as evidence that the same state of affairs existed at another time. 1 Brandis N.C. Evidence § 90 (2d ed. 1982). In this instance, that the same procedures were followed in obtaining Medicaid payments both before and after the brief hiatus involved is very strong evidence that the same procedures were used in between.

[3] Joe Edward Wagner, an accountant-auditor with the U.S. Department of Health and Human Services, testified as to an audit done in 1978 of drug inventories of the patients at one of the rest homes serviced by Belwood Pharmacy. He testified that several medicines the pharmacy claimed to be regularly dispensing to certain patients could not be found, either physically in the drug cabinets of those patients, or representatively on their medication charts, and that some of the medicines certain other patients did have were not as costly as had been paid for. The

defendant contends that this testimony was inadmissible because it tended to show he committed crimes that he was not being tried for. In our view, the testimony was properly received. Evidence as to prior crimes is admissible under our law to show knowledge, intent, plan, or design. 1 Brandis N.C. Evidence § 92 (2d ed. 1982). That defendant was shorting patients and causing the state to be overcharged a year and a half earlier tends to show that a long-standing fraudulent plan was being carried out and that the discrepancies involved here were intentional, rather than accidental.

Defendant's several other contentions, likewise without merit, require no discussion. Our study of the record and briefs leads us to the conclusion that the defendant's legal rights were not prejudicially affected during the long trial involved; and we found nothing in the record to indicate that the result would be different if the case was tried again.

No error.

Judges ARNOLD and BECTON concur.