STATE OF NORTH CAROLINA v. WILLIAM BENJAMIN HUNTER, JR., SHIKHAN TONY BARRIOS, AND RICKY LATTIMER

No. 26

(Filed 17 May 1979)

1. **Criminal Law § 74.3— confession by codefendant—no implication of defendant—admissibility**

    In a prosecution of three defendants for murder and attempted armed robbery, the trial court did not err in permitting an SBI agent to testify with respect to a pretrial statement made to him by one defendant, since the statement was made freely and voluntarily and since it did not implicate the defendant who complained of its admission.

2. **Criminal Law § 165— district attorney's jury argument—failure to object**

    There was no merit to defendant's contention that the district attorney in his jury argument "exceeded the bounds of propriety" to the prejudice of defendant, since defendant made no objection at trial to the jury argument, and since the argument of defense counsel was not transcribed, thereby prohibiting the court on appeal from considering fully the context in which the prosecutor's argument was made.

3. **Criminal Law § 169— failure to object to evidence—no prejudice to defendant**

    There was no merit to defendant's contention that the trial court erred in admitting into evidence the in-custody statement of another defendant which tended to incriminate him, since defendant did not object to the introduction of the second defendant's statement.

State v. Hunter

4. **Homicide § 21.5— first degree murder of towel store employee—sufficiency of evidence**

   In a prosecution for murder and attempted robbery, evidence was sufficient to be submitted to the jury where it tended to show that one defendant was acting in concert with the other defendants when they attempted to rob a towel store employee; defendant stayed in the getaway car while the offenses were being committed; defendant participated with his codefendants in fleeing from the scene of the crime; and the evidence was also sufficient to show that defendants conspired to commit the robbery and that the murder of the employee was committed by one conspirator in the attempted perpetration of the crime, thereby making each and all defendants guilty of murder in the first degree.

APPEAL by defendants from *Preston, J.,* 20 May 1977 Session of Superior Court for ROBESON County.

By separate indictments each defendant was charged with (1) the murder of Ted Rexford West and (2) the attempted armed robbery of a Cannon Towel Outlet store. Defendants pled not guilty to all charges.

Evidence presented by the state is summarized in pertinent part as follows:

On 25 November 1976, Thanksgiving Day, Ted West and Terry Lynn Farrell were employed at the Cannon Towel Outlet store on West Fifth Street in Lumberton, N. C. Around 6:55 p.m., as they were preparing to close the store for the night, a black male identified by Ms. Farrell at trial as defendant Hunter, entered the store. He obtained a soft drink from the drink box, carried it to the counter and paid West for it. Thereafter, he obtained some potato chips from a vending machine after which a second black male, identified by Ms. Farrell as defendant Barrios, entered the store with a large gun drawn. Defendant Hunter then put down his drink and potato chips and drew a smaller gun from his coat.

Defendant Barrios told West and Ms. Farrell that this was a stickup and for them to lie on the floor. Ms. Farrell hesitated for a moment and defendant Barrios repeated his instruction. West grabbed her by the arm and insisted that she lie on the floor. The area behind the counter being very small, West took Ms. Farrell by her arm and started pulling her toward the end of the counter. When they reached the end of the counter, West pulled her down on her knees.

Ms. Farrell then saw defendant Hunter open the cash register which contained approximately $350.00. Defendant Barrios asked West what he pushed (evidently referring to some type of button) as he travelled back of the counter. West replied, "Nothing, I didn't do anything" and begged defendant Barrios several times not to shoot him. West then turned toward Ms. Farrell and defendant Barrios shot him in his back.

Ms. Farrell testified: "[T]here was a big cloud of smoke that came from his (West's) chest. Then the blood came all over his chest and he fell down on his knees. . . . At that time I heard a gurgling sound from Ted and the taller man (Barrios) said, 'What did you say, if you say another word, I'll shot (sic) your God-damn head off', and he was pointing the gun at Ted's head".

At the time defendant Barrios shot West, defendant Hunter was standing at the cash register with his hand in it "but watching what was happening". Following the shot Ms. Farrell lay down on the floor with her hands covering her face and then heard a second shot. A little while later, she looked up, saw that the robbers were gone, went outside and summoned help.

When police and ambulance personnel arrived a few minutes later, they found West in a pool of blood near the end of the counter. He died very soon thereafter. His body was examined by a medical expert the next morning. He concluded that West had been shot in his back, that the bullet penetrated his intervertebral column, completely transacted his thoracic aorta, went through his left lung and came out his lower chest; and that West died from hemorrhage caused by the gunshot wounds.

At around 7:00 p.m. on the evening in question William J. Chavis was travelling on West Fifth Street by the Cannon Towel Outlet store. He saw two black males running from the direction of the store toward Starlite Drive which intersects West Fifth Street from the south. Chavis turned on Starlite Drive and on the shoulder of that road headed south he saw a large car "with some kind of stripe on the side of it across the doors". The two men he saw running entered the car which was already occupied by a third person and they drove off in a southerly direction. A check of the cash register disclosed that no money was taken.

Several days later law enforcement officers questioned defendants who were then serving in the Army at Fort Bragg.

Defenant Hunter admitted going to the store in question early in the evening of 25 November 1976 but did not admit participation in the attempted robbery or murder. He admitted ownership of a 1971 blue Oldsmobile 442 with white racing stripes on the sides, that he drove it to the store in question on said date and that he was with defendants Barrios and Lattimer that evening.

Defendant Lattimer admitted going to the "towel place" on the evening in question but insisted that "he hadn't pulled the trigger on no one." He further stated that he did not want to go through with the job after he arrived at the towel place but admitted that the .38 (used by Hunter) was his and that he drove part of the way back to Fayetteville.

Defendants elected not to testify but presented evidence by two fellow soldiers tending to show that they were in their barracks at Fort Bragg as late a 5:00 p.m. on the day in question. One of the witnesses testified on cross-examination that he saw the three defendants together later that night at a trailer house in Fayetteville.

Further elaboration on the testimony is hereinafter set forth in the opinion.

The jury found each defendant guilty of first-degree murder and attempted armed robbery. The court held that the armed robbery charges were merged with the first-degree murder charges and entered judgment imposing a life sentence on each defendant.

*Attorney General Rufus L. Edmisten, by Assistant Attorneys General Thomas H. Davis and Charles M. Hensey, for the State.*

*Ertle Knox Chavis for defendant-appellant Barrios.*

*John Wishart Campbell for defendant-appellant Lattimer.*

*Ertle Knox Chavis and John Wishart Campbell for defendant-appellant Hunter.*

BRITT, Justice.

After a careful consideration of all assignments of error argued in defendants' briefs, we conclude that there is no merit in any assignment, that defendants received a fair trial and that the

judgments entered are according to law. We will discuss briefly the questions raised by each defendant.

### APPEAL OF DEFENDANT BARRIOS

[1]   By his sole assignment of error, defendant Barrios contends the trial court erred in permitting S.B.I. Agent Frank Johnson to testify with respect to a pretrial statement made to him by defendant Lattimer.

It appears that this evidence is challenged for the reasons that (1) the statement was not given freely and voluntarily, and (2) it implicated defendant Barrios and was prejudicial to him, in violation of the principles set forth in *Bruton v. United States*, 391 U.S. 123, 20 L.Ed. 2d 476, 88 S.Ct. 1620 (1968).

Assuming, *arguendo*, that defendant Barrios has standing to challenge the voluntariness of the statement, we hold that the evidence presented at the *voir dire* hearing fully supports the court's findings and conclusions that the statement was given freely and voluntarily. The trial judge's finding that an accused freely and voluntarily made an inculpatory statement will not be disturbed on appeal when the finding is supported by competent evidence. *State v. Harris*, 290 N.C. 681, 228 S.E. 2d 437 (1976).

While we recognize the principles set forth in *Bruton*, we disagree with the contention that defendant Lattimer's pretrial statement implicated defendant Barrios and that it was prejudicial to him. The testimony of Agent Johnson relating to defendant Lattimer's statement and which defendant Barrios assigns as error is as follows:

"He stated that he was going to tell me the truth, that he hadn't pulled the trigger on no one. He stated that he didn't even want to go through with the job after he got to the towel place. Mr. Lattimer further stated that he came back to Cooper's trailer in Fayetteville and that he was supposed to go in the place, but stated he changed his mind when he got there and decided not to go through with it. He stated that the reason for changing his mind was that he had a feeling that something was going to happen. He further stated that the .38 belonged to him.

"Mr. Lattimer stated that both the magnum gun and the .38 were under the seat and that he—when they got to the

towel place. Mr. Lattimer also told this agent that he drove part of the way back to Fayetteville."

We are unable to perceive how defendant was prejudiced by the quoted statement, hence the assignment of error is overruled.

## APPEAL OF DEFENDANT HUNTER

Defendant Hunter contends first that the court erred in admitting evidence relating to his pretrial in-custody statement. This contention is based primarily, if not solely, on the assumption that the trial judge did not make findings of fact that the statement was intelligently and voluntarily made, therefore, it was inadmissible. He cites *State v. Biggs*, 289 N.C. 522, 223 S.E. 2d 371 (1976).

We note that following the trial, defendant Hunter's trial counsel died and that Messrs. Campbell and Chavis were appointed to perfect the appeal. In his brief defendant states that he was unable to find anywhere in the trial record any findings by the trial judge based upon evidence presented at the *voir dire*. Since defendant filed his brief, we have allowed the state's motion to file an addendum to the record which includes those findings. They are fully supported by the evidence and support the court's conclusion that the statement was intelligently and voluntarily made. That being true, the findings will not be disturbed on appeal. *State v. Harris, supra.*

[2] Defendant Hunter's other contention is that the district attorney in his jury argument "exceeded the bounds of propriety" to the prejudice of said defendant. We are not impressed with this contention.

The record discloses that no defendant made any objection at trial to the district attorney's jury argument. It also appears that the arguments of defense counsel were not transcribed, therefore, we are unable to consider fully the context in which the prosecutor's argument was made.

Ordinarily, an impropriety in counsel's jury argument should be brought to the attention of the trial court before the case is submitted to the jury in order that the impropriety might be corrected. *State v. Peele*, 274 N.C. 106, 161 S.E. 2d 568 (1968), *cert. denied*, 393 U.S. 1042, 21 L.Ed. 2d 590, 89 S.Ct. 669 (1969). This

rule does not apply, however, when the impropriety is so gross˙ that it cannot be corrected. *State v. Miller*, 271 N.C. 646, 157 S.E. 2d 335 (1967).

We have held many times that wide latitude is allowed counsel in his argument to the jury, including the use of illustrations and anecdotes; and counsel is entitled to argue the law and the facts in evidence together with all reasonable inferences to be drawn therefrom. 4 Strong's N. C. Index 3d, Criminal Law § 102.1. The control of the argument of the district attorney and counsel must be left largely to the discretion of the trial judge and his rulings thereon will not be disturbed in the absence of gross abuse of discretion. *Ibid* § 102.2.

With the aforestated principles in mind, we have carefully reviewed the district attorney's jury argument, with particular reference to the portions designated by defendant, and conclude that the district attorney did not exceed the bounds of propriety in this case.

## APPEAL OF DEFENDANT LATTIMER

Defendant Lattimer contends first that the trial court erred in admitting evidence of his in-custody statement for the reason that it was not freely and voluntarily given. This contention has no merit. Before admitting evidence of the statement, the court conducted a *voir dire* hearing at which evidence for the state and defendant was presented. Following the hearing the court made findings of fact and concluded that before making the statement defendant Lattimer knowingly and intelligently waived counsel and that he made the statement freely and voluntarily. The court's findings are fully supported by the evidence, therefore, will not be disturbed on appeal. *State v. Harris, supra.*

[3] Defendant Lattimer contends next that the trial court erred in admitting into evidence the in-custody statement of defendant Hunter which tended to incriminate Lattimer and cites *Bruton v. United States, supra.* There is no merit in this contention. Lattimer did not object to the introduction of Hunter's statement. "It is well settled that with the exception of evidence precluded by statute in furtherance of public policy [which exception does not apply to this case], the failure to object to the introduction of the evidence is a waiver of the right to do so, and its admission, even

State v. Hunter

if incompetent is not a proper basis for appeal." 4 Strong's N. C. Index 3d, Criminal Law § 162, p. 825. *See also:* Rule 10, Rules of Appellate Procedure, 287 N.C. 671, 698.

[4] Finally, defendant Lattimer contends the court erred in denying his motion to dismiss the charges against him because of lack of evidence. We disagree with this contention.

In the light most favorable to the state, the evidence against Lattimer tended to show: He was with defendants Barrios and Hunter in their barracks at Fort Bragg from noon until around 5:00 p.m. on the day in question. Thereafter, he rode with them in Hunter's car to Lumberton (approximately 45 miles), carrying his .38 pistol with him. While Barrios and Hunter entered the store, attempted the robbery with Hunter using Lattimer's gun, and Barrios shot West, Lattimer stayed with the car which was parked on the shoulder of a road some 300 feet from the store. When Barrios and Hunter returned to the car after committing the offenses, they entered the car and all three sped away together with Lattimer driving part of the way back to Fayetteville. After arriving in Fayetteville, the three of them went to a trailer house on Apache Street where they spent the remainder of the night and were together there the next morning.

On a motion by a defendant to dismiss the charges for lack of evidence, the evidence will be viewed in a light most favorable to the state; and the state is entitled to every reasonable inference arising therefrom; contradictions and discrepancies, even in the state's evidence, are for the jury to resolve and do not warrant dismissal. 4 Strong's N. C. Index 3d, Criminal Law § 104 and cases therein cited. The evidence was sufficient to support a finding by the jury that Lattimer was acting in concert with Barrios and Hunter when they attempted to rob the towel store; that he stayed with the getaway car and that he participated with his codefendants in fleeing from the scene of the crime. The evidence was also sufficient to support a finding by the jury that Lattimer and his codefendants conspired to rob the towel store; and that the murder of West was committed by Barrios in the attempted perpetration of the crime, thereby making each and all of the defendants guilty of murder in the first degree. 6 Strong's N. C. Index 3d, Homicide § 2.

\* \* \*

In defendants' trial and the judgments entered, we find

No error.