STATE OF NORTH CAROLINA v. HELEN PARTIN BARBOUR

No. 7911SC317

(Filed 2 October 1979)

**1. Embezzlement § 6— school treasurer—sufficiency of evidence of embezzlement**

In a prosecution of defendant for embezzlement pursuant to G.S. 14-92, evidence was sufficient to be submitted to the jury where it tended to show that defendant was the secretary-treasurer of an elementary school; she had the duty to receive money on behalf of the school, to maintain financial records of that money, and to deposit it in the school account at the bank; defendant did receive large amounts of money and did make deposits in the bank; she

State v. Barbour

made all deposits for the school; $7,831.72 received by the school was not so deposited; defendant had personal financial problems during the time involved; defendant often took the school money home with her; and sometimes deposits were in excess of collections and sometimes they were less. Furthermore, the lack of evidence of control and possession of the funds by defendant, to the exclusion of all other persons, was not fatal to the State's case.

**2. Criminal Law §§ 73, 81— embezzlement case—testimony from bank statements proper**

In a prosecution of defendant for embezzlement from a school, the trial court did not err in permitting the school principal to testify concerning dates, amounts and balances shown on a bank statement, since the principal's testimony was not used to prove the truth of the figures on the statement but was offered to show the circumstances which alerted the principal and caused him to take action.

**3. Criminal Law § 80— embezzlement case—bank ledger—entries made in regular course of business**

The trial court in an embezzlement case did not err in allowing an assistant cashier of a bank to testify as to entries on the bank's ledger card without his having made the entries, having supervised them, or having knowledge of them, since the entries to which the cashier testified were made in the regular course of business, near the time of the transaction involved, and were properly authenticated.

**4. Criminal Law § 56; Embezzlement § 5— opinion testimony of CPA—admissibility**

The trial court in an embezzlement case did not err in qualifying a CPA as an expert and in allowing his opinion based upon an examination of only a portion of the entire financial record, since the opinion expressed was supported by data and was within the field of expertise of the CPA.

**5. Embezzlement § 6.1— defendant as fiduciary person—instruction proper**

The trial court in an embezzlement case did not err in charging the jury that defendant was a "fiduciary person," though the statute under which defendant was charged neither contained nor referred to those words, since the court was not restricted to using the exact words of the statute in giving instructions, and the use of "fiduciary person" to define the statutory phrasing of G.S. 14-92 has been specifically approved by the N.C. Supreme Court.

APPEAL by defendant from *Canaday, Judge.* Judgment entered 23 August 1978 in Superior Court, JOHNSTON County. Heard in the Court of Appeals 27 August 1979.

Upon a plea of not guilty, defendant was tried on an indictment charging her with the unlawful misapplication of sums of money belonging to her public employer, a violation of N.C.G.S. 14-92. The state alleged that over a period of time from 1

September 1976 until 1 April 1977 the defendant, secretary and treasurer of the Four Oaks Elementary School, embezzled over $7,000 belonging to the school, a unit of the Johnston County Board of Education.

The evidence for the state tended to show that in June 1976 defendant was requested by the new principal of Four Oaks, John W. Floyd, to remain as secretary-treasurer of the school; defendant had served in this position for twelve years. Defendant's primary duties were to "keep up with the money" and to make deposits and prepare disbursement reports. Defendant was to maintain the financial ledger of the school and keep it in her office. Money received from students and teachers was to be placed into envelopes, with notations of source and amount. A receipt was to be given if the amount stated coincided with the amount actually in the envelope. Only the defendant and Mr. Floyd receipted school money; the money was put into defendant's desk drawer. On eighty-seven occasions Mr. Floyd received funds, writing the defendant's initials on receipts he issued; in this manner he collected in excess of $1500. Defendant was instructed to make daily deposits of collected funds; Mr. Floyd made no deposits. Defendant also was required to make monthly receipt and disbursement statements for the county superintendent's office; on three occasions Mr. Floyd received notice that such statements had not been received.

Monthly bank statements of the school's account were turned over to defendant by Mr. Floyd. The statement for February 1977 showed a balance of only $1551.44; when questioned, the defendant said that a mistake had occurred. In April, Mr. Floyd examined the bank records of the school's account; further examination of the school financial journal revealed that no entries had been made for the period September through March. The school's books and records were turned over to auditors.

On two occasions during the period in question defendant told Mr. Floyd that $65 was missing, following a breaking or entry of the school. Disbursement of funds could only take place over the joint signatures of defendant and Mr. Floyd. Mr. Floyd testified that at no time did he alter or destroy any of the school's records.

Evidence offered by the state included the expert opinion of a certified public accountant that an overall deficiency of $7,831.72 existed between the master receipt books and amounts deposited in the bank. For the months of September and October 1976 and February 1977, there were deficiencies in the deposits; for November and December 1976 and for January and March 1977, deposits exceeded the receipts.

Defendant's evidence tended to show that the desk drawer in which the funds and records were kept could not be locked and that the desk was in a large, open room with easy access. The assistant principal testified he had seen as many as twenty-five students per day in the defendant's office when defendant was not present; teachers also came into the office for various reasons. On one occasion a student was seated at defendant's desk while two others stood near the desk. Defendant's duties were greatly expanded after Mr. Floyd became principal. Her receipting of money and serving as receptionist were often interrupted by constant traffic in and out of her office. Mr. Floyd told an insurance adjuster that defendant had not had time to properly keep the books. Defendant sometimes had to be out of her office, leaving it unattended. There was no regular procedure for collecting school money. On numerous occasions Mr. Floyd received money from teachers, and without counting the money, defendant wrote receipts based on what Mr. Floyd told her he had received. Defendant suggested that a safe be provided for the office, and when one was not provided, defendant unsuccessfully tried to get a protective counter built.

Defendant often observed Mr. Floyd seated at her desk. She told fellow workers she did not have time to work on the books. She had considered resigning from her position in late September or early October 1976.

Further evidence for the defendant tended to show that she never received instructions from Mr. Floyd pertaining to the deposit of money in the bank and that more than once she signed a check drawn on the school account in blank and gave it to Mr. Floyd for his use. On several occasions defendant did not immediately deposit money collected, and on days of heavy collections defendant deposited money before running receipts. Defendant left money overnight in her desk at times; on at least one

occasion money was stolen. Sometimes defendant locked school money in the trunk of her car overnight. Defendant told a member of the school advisory board that she did not take the missing money and did not know what happened to it. Defendant called sixteen witnesses who testified to her good character and reputation in the community.

Defendant moved for dismissal at the close of the state's evidence and again at the end of all the evidence. These motions were denied.

The jury returned a verdict of guilty of embezzlement against the defendant. Judgment was entered imposing a prison sentence of not less than five years nor more than seven years, which was suspended for five years upon certain conditions, including restitution to the school of $7,831.72. Defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Elisha H. Bunting, Jr. for the State.*

*Philip C. Shaw and T. Yates Dobson, Jr. for defendant appellant.*

MARTIN (Harry C.), Judge.

[1]  The primary argument of defendant on appeal is that there was insufficient evidence, either to take the case to the jury or to support the jury verdict of guilty. As defendant states her concerns: "The State never traced a penny and produced not one scintilla of evidence of criminal intent, fraud, misapplication or subterfuge by the defendant. Nothing incriminating was ever shown except sloppy bookkeeping and the fact defendant was present at Four Oaks School." The essence of defendant's argument is that the lack of evidence of control and possession of the funds by defendant, to the exclusion of all other persons, is fatal to the state's case. Defendant emphasizes the fact that "the money was simply left in a desk drawer, for all the world to steal, . . .."

We hold the trial court did not err in denying defendant's motions for dismissal. The test to be applied in ruling on a motion to dismiss is whether there is "substantial evidence of all material elements of the offense to withstand the motion to dismiss." *State v. Stephens,* 244 N.C. 380, 383, 93 S.E. 2d 431, 433 (1956). Such a

motion requires consideration of the evidence in the light most favorable to the state; the state is entitled to every reasonable inference which may be drawn from the evidence. *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975). The substantial evidence may be circumstantial or direct, or both. *State v. Stephens, supra.* The court is not required to find that the evidence excludes every reasonable hypothesis of innocence in denying a defendant's motion to dismiss. To do so would constitute the presiding judge the trier of facts. Substantial evidence of every material element of the crime charged is required before the court can submit the case to the jury. Proof of guilt beyond a reasonable doubt is required before the jury can convict. *Id.*

Defendant was charged with a violation of N.C.G.S. 14-92, which provides in part that "if any person having or holding any moneys or property in trust for any . . . educational institution, shall embezzle or otherwise willfully and corruptly use or misapply the same for any purpose other than that for which such moneys or property is held, such person shall be guilty of a felony, . . .." It is not necessary for the state to prove that defendant had exclusive possession of the funds to sustain the charge of embezzlement. *United States v. Harper*, 33 F. 471 (C.C.S.D. Ohio 1887); *Young v. State*, 44 Ohio App. 1, 184 N.E. 24 (1932); *State v. Larson*, 123 Wash. 21, 211 P. 885, *mod. on other grounds*, 216 P. 28 (1923); 29A C.J.S. Embezzlement § 9 (1965). More than one person can have possession of the same property at the same time. *State v. Finney*, 29 N.C. App. 378, 224 S.E. 2d 263, *rev'd on other grounds*, 290 N.C. 755, 228 S.E. 2d 433 (1976); *State v. Wells*, 27 N.C. App. 144, 218 S.E. 2d 225 (1975).

The fraudulent intent required in the charge of embezzlement can be inferred from the facts proven. It is not necessary that there be direct evidence of such intent. *State v. Helsabeck*, 258 N.C. 107, 128 S.E. 2d 205 (1962); *State v. McLean*, 209 N.C. 38, 182 S.E. 700 (1935).

The record supports the trial court's determination that the case against defendant should not have been dismissed. Defendant, secretary-treasurer of Four Oaks Elementary School, testified that she took the school money home with her each night. Other evidence showed that entries in the master receipt book and bank deposits varied greatly. In September 1976

receipts of $10,686.90 were compared to deposits of $7,669.40; in October 1976, although $7,685.01 was receipted, only $48.00 was deposited. In November and December 1976 and January 1977 defendant made deposits greater than receipts for those months. The CPA expert gave his opinion that these deposits were attempts to reduce the existing shortage. Defendant had financial problems in 1976; she and her husband borrowed money during the year. When we view this evidence in the light most favorable to the state, we find substantial evidence of all material elements of the charged offense.

Although it is a basic tenet of our criminal law system that proof of guilt beyond a reasonable doubt is required before the jury can convict, once the trial court finds that substantial evidence exists to take the case to the jury, "it is *solely* for the jury to determine whether the facts taken singly or in combination satisfy them beyond a reasonable doubt that the defendant is in fact guilty." *State v. Smith*, 40 N.C. App. 72, 79-80, 252 S.E. 2d 535, 540 (1979). The jury returned a verdict of guilty in this case, and there is no reason for this Court to reverse that verdict.

In considering the motions to dismiss, and the challenge to the sufficiency of the evidence to support the verdict, we are mindful of the recent United States Supreme Court opinion in *Jackson v. Virginia*, ---- U.S. ----, 61 L.Ed. 2d 560 (1979). The Supreme Court in *Jackson* established a constitutional standard applicable to state courts for review of motions testing the sufficiency of evidence to support a conviction of a criminal charge. This standard is: Could a rational trier of fact have found the defendant guilty beyond a reasonable doubt of the crime charged under the laws of North Carolina? The Court held that the United States Constitution protects an accused against conviction except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt. Perhaps this is merely a restatement of the North Carolina rule requiring substantial evidence of every material element of the crime charged to support a conviction. However, the requirement that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt appears to announce a second test to be applied in such rulings.

Although the majority opinion did not treat the question of retroactivity, it expressly held that "[a] challenge to a state conviction brought on the ground that the evidence cannot fairly be deemed sufficient to have established guilt beyond a reasonable doubt states a federal constitutional claim." *Id.* at ---, 61 L.Ed. 2d at 575-76. Constitutional doctrine has generally been applied retroactively where its purpose is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and reflects upon the accuracy of guilty verdicts. *Hankerson v. North Carolina*, 432 U.S. 233, 53 L.Ed. 2d 306 (1977); *Williams v. United States*, 401 U.S. 646, 28 L.Ed. 2d 388 (1971).

The defendant Barbour was tried prior to 28 June 1979, the certification date of *Jackson*. We hold the principles of *Jackson* are applicable to the trial of defendant Barbour. In the instant case there is substantial evidence to support beyond a reasonable doubt these findings: defendant was an employee of an educational institution; defendant had the duty to receive money on behalf of the school, to maintain financial records of that money, to deposit it in the school account at the Bank of Four Oaks; defendant did receive large amounts of money and did make deposits in the bank; defendant made all deposits; $7,831.72 received by the school was not so deposited; defendant had personal financial problems during the time involved; defendant often took the school money home with her; sometimes deposits were in excess of collections; sometimes deposits were less than receipts.

In applying the standard announced in *Jackson* to the evidence, we hold that a rational trier of fact could reasonably have found the defendant committed embezzlement as charged under the laws of North Carolina. The trial court properly denied the motions to dismiss and the motion for appropriate relief.

Two of defendant's additional arguments are related to the law of evidence. Defendant contends that the court committed reversible error in allowing two witnesses for the state to testify from records which they did not prepare. At trial the witnesses were handed bank statements, asked to examine them, and permitted to tell the jury dates, amounts, and balances shown thereon. According to defendant this testimony violated the best evidence rule and the hearsay rule.

[2]  It is basic hornbook law that only if "the assertion of any person, other than that of the witness himself in his present testimony, is offered to prove the truth of the matter asserted" is the evidence hearsay and inadmissible, unless it falls within one of the recognized exceptions to the rule. 1 Stansbury's N.C. Evidence (Brandis rev. 1973), § 138. In this case, the principal's testimony was not used to prove the truth of the figures on the statement; its purpose was to show the circumstances which alerted the principal and underlay his actions. The hearsay rule was not violated.

[3]  Defendant also questions the court's allowing the assistant cashier of the bank to testify as to entries on the bank's ledger card without his having made the entries, having supervised the entries, or having knowledge of them. The test for receiving business entries into evidence is that they be "made in the regular course of business, at or near the time of the transaction involved, and are authenticated by a witness who is familiar with them and the system under which they are made, . . .." *Id.* § 155." The record reveals that all the steps of this test were met; therefore, the court did not err in allowing the ledger as a business record or in permitting the assistant cashier to testify as to its contents.

[4]  Defendant's other evidentiary argument is that the court committed error in qualifying a certified public accountant as an expert and in allowing his opinion based upon an examination of only a portion of the entire financial record. Defendant stipulated that the witness was a CPA. It is ordinarily within the exclusive province of the trial judge to determine whether a witness has the requisite skill to qualify as an expert. *Id.* § 133. The competency of a witness to testify as an expert is a matter primarily within the sound discretion of the trial court; this discretion is not ordinarily disturbed by a reviewing court. *Utilities Comm. v. Telephone Co.*, 281 N.C. 318, 189 S.E. 2d 705 (1972); *LaVecchia v. Land Bank*, 218 N.C. 35, 9 S.E. 2d 489 (1940). There is no reason to disturb the exercise of such discretion here.

Defendant maintains that a complete general audit might have disclosed what happened to the missing funds. The CPA did not conduct a complete audit; he examined and compared only the master receipt books and the bank deposit statements. The pur-

pose of the special audit was to determine if money receipted was then deposited in the bank. The CPA testified that although $32,489.65 was receipted from 1 September 1976 through 1 April 1977, only $24,657.93 was deposited. His opinion was that the amount of deficiency was $7,831.72. He further testified that there were some months when bank deposits were greater than amounts shown in the receipt books. This opinion was supported by data and was within the field of expertise of the CPA. It was not prejudicial error for the judge to allow the CPA's opinion, based on the special audit.

[5]   Defendant's final argument is that the court committed prejudicial error in charging the jury that defendant was a fiduciary person. Defendant contends that by using the words "fiduciary person" in the charge, the trial judge expressed his opinion, contrary to the mandate of N.C.G.S. 15A-1222.

It is true that the statute under which defendant was indicted, N.C.G.S. 14-92, neither contains nor refers to the words "fiduciary person." However, the trial court was not restricted to using the exact words of the statute in giving instructions. *State v. Robbins*, 287 N.C. 483, 214 S.E. 2d 756 (1975), *mod. on other grounds*, 428 U.S. 903, 49 L.Ed. 2d 1208 (1976); *State v. Mundy*, 265 N.C. 528, 144 S.E. 2d 572 (1965). Moreover, the use of "fiduciary person" to define the statutory phrasing of N.C.G.S. 14-92 has been specifically approved. *State v. Agnew*, 294 N.C. 382, 241 S.E. 2d 684, *cert. denied*, 439 U.S. 830, 58 L.Ed. 2d 124 (1978); *State v. Shipman*, 202 N.C. 518, 163 S.E. 657 (1932). Therefore, this assignment of error is without merit.

No error.

Chief Judge MORRIS and Judge PARKER concur.