STATE OF NORTH CAROLINA v. DAVID JONES HUNNICUTT

No. 7929SC457

(Filed 15 January 1980)

1. **Criminal Law § 80.1— admissibility of computer billing printout for telephone**
   In this prosecution for first degree murder, the State provided a sufficient foundation for the introduction of a computer billing printout showing that a telephone call had been made from defendant's phone to a hospital where the manager of the local Southern Bell office testified that the printout was made as a part of the business records regularly kept by Southern Bell, that the entries were recorded as each call was made and were thereafter made available for billing in the form of printed sheets, that the system had been in operation in his office for two years, that he was familiar with the interpretation of computer records as well as how the information was gathered, stored and utilized, and that the records were based on what he understood to be a reliable and accurate information system.

2. **Criminal Law § 80.1— note sent by defendant—authentication**
   The State properly identified and authenticated a note found by a jailer in a deck of cards sent by defendant to another inmate while in jail to permit testimony as to the contents of the note where the note was identified as the note handed to the jailer in the deck of cards, and the jailer testified that defendant was the only person in the jail at that time whose name or initials included the letters by which the note was signed, that he had seen defendant write his name, and that the deck of cards was in his exclusive possession from the time defendant gave it to him until he examined it and discovered the note.

3. **Criminal Law § 42.5— truck similar to defendant's car near crime scene—admissibility**

    A witness's testimony that he observed a truck similar to that of defendant in the vicinity of two murder victims' house on the date of their deaths was not inadmissible because of its lack of specificity and positiveness, since such factors go to the weight and not the admissibility of the testimony.

4. **Criminal Law § 48— no implied admission by silence—Miranda warnings not necessary**

    An officer's testimony that after serving murder warrants on defendant, defendant stated, "You mean you are saying that I went down there and shot those people?" did not constitute failure to deny an accusatory statement and was not inadmissible because defendant had not been given the Miranda warnings, since defendant was not questioned regarding his guilt or innocence, no interrogation took place prior to the statement, and defendant's statement was a denial and not an implied admission.

5. **Criminal Law § 165— impropriety in jury argument—waiver of objection**

    Defendant waived his right to complain of alleged impropriety in the district attorney's jury argument by failing to object thereto.

6. **Homicide § 21.5— first degree murder—sufficiency of evidence**

    The State's evidence was sufficient to be submitted to the jury on the issue of defendant's guilt of first degree murder and to support his conviction of second degree murder where it tended to show that defendant visited the victims' residence armed with a pistol; gunshots were heard coming from the direction of the victims' residence; the victims' deaths resulted from multiple gunshot and stab wounds; and defendant told another inmate of the jail where he was incarcerated that he killed a man and a woman by shooting them and afterwards stabbing them to make sure they were dead.

APPEAL by defendant from *Lewis, Judge.* Judgment entered 5 December 1978 in Superior Court, POLK County. Heard in the Court of Appeals 24 September 1979.

Defendant was convicted on two charges of second degree murder and sentenced to two consecutive terms of not less than 70 nor more than 80 years.

The State presented evidence at trial which tended to show the following:

On 14 July 1978 the bodies of Gary Leatherwood and Janet Driscoll were found in their house in Saluda, North Carolina. Medical evidence revealed that the two deaths, which occurred on 12 July 1978, resulted from multiple gunshot and stab wounds. Approximately eight .32 caliber cartridges were found at the residence. It was established at trial that defendant possessed a

.32 caliber pistol on the day of the murders. Defendant was identified as being in the vicinity of the victims' residence during the afternoon before their deaths.

A substantial portion of the State's evidence came from the testimony of one Tommy Guin, who had associated with defendant on 12 July 1978. Guin testified that he and some companions contacted defendant at a service station in Hendersonville where defendant worked; that they later met at a motel and drove back to the service station where defendant obtained a small pistol; that they then drove to defendant's house where defendant obtained more weapons; that later in the evening they drove to a house in Saluda, where defendant left the others in their vehicle and approached the house; that defendant said that "he and a guy that lived at this house had a few problems and that [he] had to go by and talk to him". Guin testified further concerning the evening of 12 July 1978:

> "David got out and walked around the van and went up sort
> of this way, and we sat there for a moment and just sitting
> there and we heard some gunshots go off, and these gunshots
> came from the way David Hunnicutt went. I heard four or
> five gunshots. Then we started the van up and started to
> leave and we were driving down the road with the lights off;
> and we heard a girl yell, 'Oh, my God.' Then I heard some
> more gunshots, and we drove down the road and right as we
> got to a post light, we turned on our lights."

Guin's testimony was corroborated by several of the deceased victims' neighbors who stated they had heard gunshots on the night in question. Defendant was seen later the same night at a service station in Saluda, where a friend picked him up. At that time, defendant explained that he had been with two boys and that they had left him and had stolen his guns from him.

Further evidence indicated that a telephone call was made from defendant's unlisted phone to St. Luke's Hospital in Polk County at which time a male voice inquired whether either of the victims had been admitted to the hospital. The manager of the Hendersonville Southern Bell office was allowed to testify over defendant's objection concerning the computer billing system used by Southern Bell. He testified that defendant's telephone bill indicated a call had been placed from defendant's number to the

number belonging to St. Luke's Hospital, consistent with previous testimony. The State offered the testimony of a police officer with respect to a statement made by defendant after he had been taken into custody.

The State also offered the testimony of Gary Durham, Chief Jailer of Polk County, who stated that after defendant had been placed in the Polk County Jail, one Michael Lawson was arrested in connection with the murders in Saluda and placed in the detention facility along with defendant. The jailer testified that defendant gave him a book and a deck of cards to give to Lawson, and that upon examining them, he found a note hidden in the cards which read: "Silence is golden, don't let them trick you, you've done nothing. Tear note up, flush it. H.U.N." Further evidence indicated that while in the Polk County Jail, defendant related to inmate Hughes that he killed a man and a woman by shooting them and afterwards stabbing them to make sure they were dead. There was also evidence that defendant told inmate Hayes that he was paid to kill Janet Driscoll, that Gary Leatherwood was not supposed to be killed, but that he did not leave any witnesses.

Defendant did not present any evidence.

The trial court denied defendant's motions to dismiss, and sent the case to the jury with instructions on first and second degree murder. The jury returned a verdict of guilty to second degree murder, and defendant appealed.

*Attorney General Edmisten, by Associate Attorney Grayson G. Kelley, for the State.*

*Stepp, Groce, Pinales & Cosgrove, by W. Harley Stepp, Jr., and Edwin R. Groce, for defendant appellant.*

MORRIS, Chief Judge.

[1] Defendant initially assigns as error several evidentiary questions, the first of which concerns the introduction into evidence of a microfiche reader printout indicating that a telephone call had been made from defendant's phone to St. Luke's Hospital in Polk County. Defendant's objection to the evidence as hearsay was overruled. The State asserts that the computer printout was properly admitted under the business records exception to the rule against hearsay.

State v. Hunnicutt

The admissibility of computer printout sheets of business records stored in electronic computers is governed by our Supreme Court's ruling in *State v. Springer*, 283 N.C. 627, 197 S.E. 2d 530 (1973), wherein the Court stated the following:

"[P]rintout cards or sheets of business records stored on electronic computing equipment are admissible in evidence, if otherwise relevant and material, if: (1) the computerized entries were made in the regular course of business, (2) at or near the time of the transaction involved, and (3) a proper foundation for such evidence is laid by testimony of a witness who is familiar with the computerized records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy." 283 N.C. at 636, 197 S.E. 2d at 536.

*See also State v. Passmore*, 37 N.C. App. 5, 245 S.E. 2d 107, *cert. denied*, 295 N.C. 556, 248 S.E. 2d 734 (1978); *State v. Stapleton*, 29 N.C. App. 363, 224 S.E. 2d 204, *appeal dismissed*, 290 N.C. 554, 226 S.E. 2d 513 (1976). *See generally* 1 Stansbury's N. C. Evidence, § 155 (Brandis Rev. Supp. 1976).

In the instant case, the evidence is plenary in support of the admissibility of the computer printouts. Upon voir dire examination, Harold Kincaid, manager of the Southern Bell Office in Hendersonville, testified that the microfiche printout in question was made as part of the business records regularly kept by Southern Bell Telephone. He further testified that the microfiche entries were recorded as each call was made, and were thereafter made available for billing in the form of printed sheets. The witness explained that the system had been in operation in Hendersonville for two years, and that during this time he had become familiar with the interpretation of the computer records, as well as how the information was gathered, stored and utilized. Mr. Kincaid testified further that the records were based and calculated on what he understood to be a reliable and accurate information system. From this evidence we hold that the State provided a proper foundation for the introduction of the computer billing printout sheets. It follows, therefore, that the exhibit and the testimony with respect thereto were properly admitted into evidence. *See State v. Stapleton*, supra.

[2]   Defendant argues that the trial court court erred by allowing
Gary Durham to testify as to the contents of a note he found in a
deck of cards handed to him by defendant. We find no merit in
defendant's argument, in that the note was properly identified
and authenticated. The note was produced at trial and identified
as the note which defendant handed to Gary Durham. The
evidence indicates that defendant handed Durham the deck of
cards; that defendant requested the cards be given to Lawson;
that defendant and Lawson then were the only two persons in the
facility at that time who had been charged in connection with the
deaths of Gary Leatherwood and Janet Driscoll; that defendant
was the only person in the facility at that time whose name or ini-
tials included the letters "H.U.N."; that the witness had the occa-
sion to observe defendant write his name, which he said included
the initials on the note; and that the deck of cards was in the ex-
clusive possession of the witness from the time defendant gave it
to him until he examined it and discovered the note. This
evidence is sufficient to authenticate the writing in question. *See
State v. Davis*, 203 N.C. 13, 164 S.E. 737, *petition for reconsidera-
tion dismissed*, 203 N.C. 35, 164 S.E. 749, *cert. denied*, 287 U.S.
649, 77 L.Ed. 561, 53 S.Ct. 95 (1932). *See generally* 2 Stansbury's
N. C. Evidence, § 195 (Brandis Rev. 1973).

[3]   Defendant also assigns error to the admission of the
testimony of one William Pace that he observed a truck similar to
that of defendant's in the vicinity of the deceased victims' house
on 12 July 1978. Defendant urges us to reject this testimony
because of its supposed lack of specificity and positiveness. This
concern goes to the weight of the evidence, and not its ad-
missibility. Since we view the testimony sufficiently probative to
justify admission into evidence, we overrule this assignment of er-
ror. Defendant further objects to the court's allowing testimony
concerning certain admissions allegedly made by defendant while
in Polk County Jail, in that such testimony was unreliable. Again,
we view the issue of credibility as one for the jury, and therefore
admission of such testimony to the jury, after cross-examination
and upon proper instructions, is proper.

[4]   Defendant complains that the trial court erred by admitting
the testimony of State Bureau of Investigation Agent Ned Whit-
mire as to a statement made by defendant in his presence. Whit-
mire testified that after serving certain warrants upon defendant

and taking him into custody, defendant stated, "You mean you are saying I went down there and shot those people?" Defendant contends that the effect of the testimony was that defendant failed to deny an accusatory statement made in his presence, and that he had not been warned of his *Miranda* rights prior to his statement. After reviewing the record and the applicable law, we conclude that the statement was properly admitted and that no prejudice was created by its admission. It is clear that defendant was not questioned regarding his guilt or innocence, and that no interrogation of defendant had taken place prior to the statement being made. Further, we view defendant's statement as constituting a denial and certainly not an implied admission to the charges listed in the warrants. Defendant suffered no prejudice by the admission of this testimony.

[5]   By his next assignment of error, defendant contends that the court erred by failing to strike *ex mero motu* a portion of the district attorney's closing argument, asserting that it was tantamount to commenting on defendant's failure to testify or present a defense. Defendant did not object to the State's remarks, and, therefore, waived his right to complain. "Ordinarily, an impropriety in counsel's jury argument should be brought to the attention of the trial court before the case is submitted to the jury in order that the impropriety might be corrected." *State v. Hunter,* 297 N.C. 272, 277, 254 S.E. 2d 521, 524 (1979). Although this rule does not apply when the impropriety is so gross that it cannot be corrected, *State v. Hunter,* supra, we conclude upon review of the argument that the alleged transgression was not prejudicial to defendant. Control of jury arguments is largely a matter of judicial discretion, and rulings thereon by the trial judge will not be disturbed in the absence of gross abuse of discretion. *State v. Hunter, supra. See generally* 4 Strong's N. C. Index 3d, Criminal Law, § 102.2 (1976). We find no abuse of discretion.

Defendant next complains that the trial judge failed to submit to the jury the issue of voluntary manslaughter in addition to the issues of first and second degree murder. This objection is not well taken. "The correct rule requires the trial judge to charge on a lesser included offense when and only when there is evidence which would support a conviction of the lesser crime. The presence of such evidence is the determinative factor." *State v. Irick,* 291 N.C. 480, 501, 231 S.E. 2d 833, 847 (1977). There was no

evidence presented in this case that would justify such a submission. Defendant's exception is, therefore, overruled.

[6] Defendant further contends that the trial court improperly denied his motion to dismiss at the close of the State's evidence and at the close of all the evidence, and that the court improperly entered judgment upon the jury's verdict. Justice Huskins, in *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975), clearly stated the applicable standards in consideration of a motion to nonsuit:

> "A motion to nonsuit in a criminal case requires consideration of the evidence in the light most favorable to the State, and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967). Contradictions and discrepancies are for the jury to resolve and do not warrant nonsuit. *State v. Bolin*, 281 N.C. 415, 189 S.E. 2d 235 (1972); *State v. Greene*, 278 N.C. 649, 180 S.E. 2d 789 (1971). All of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is considered by the Court in ruling upon the motion. *State v. Cutler, supra; State v. Walker*, 266 N.C. 269, 145 S.E. 2d 833 (1966). If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that defendant committed it, a case for the jury is made and nonsuit should be denied. *State v. Cook*, 273 N.C. 377, 160 S.E. 2d 49 (1968); *State v. Norggins*, 215 N.C. 220, 1 S.E. 2d 533 (1939)." 288 N.C. at 117, 215 S.E. 2d at 581-82.

Under these principles, "[i]f the trial court determines that a *reasonable* inference of the defendant's guilt *may* be drawn from the evidence, it must deny the defendant's motion and send the case to the jury even though the evidence may also support reasonable inferences of the defendant's innocence." *State v. Smith*, 40 N.C. App. 72, 79, 252 S.E. 2d 535, 540 (1979). We view the evidence, when considered in a light most favorable to the State, as sufficient to raise a reasonable inference of defendant's guilt. The evidence, although circumstantial, certainly supports an inference that defendant visited the deceased victims' residence armed with a weapon, and that some form of altercation occurred

resulting in the deaths. The State having carried its burden, the trial judge properly submitted the evidence to the jury. At that point, "it is *solely* for the jury to determine whether the facts taken singly or in combination satisfy them beyond a reasonable doubt that the defendant is in fact guilty." *State v. Smith, supra*, 40 N.C. App. at 79, 252 S.E. 2d at 540. We further hold that a rational trier of fact could reasonably have found the defendant committed the crimes charged. *See Jackson v. Virginia*, --- U.S. ---, 61 L.Ed. 2d 560, 99 S.Ct. 2781 (1979); *State v. Barbour*, 43 N.C. App. 143, 258 S.E. 2d 475 (1979).

Defendant argues, in addition, that the trial court erred in its charge to the jury with respect to the effect convictions of criminal offenses were to have upon the truthfulness of the various witnesses. Upon a review of the judge's charge in this case, we conclude that the judge accurately explained to the jury the purposes for which such evidence was to be considered, as well as explaining the role of the jury in deliberating upon the evidence. Defendant's objection to the trial court's instruction is thereby overruled.

We conclude that in the trial below, the judge committed

No error.

Judges PARKER and MARTIN (Robert M.) concur.